**Martin William KLOTZ,
Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

No. C7–88–1812.

Court of Appeals of Minnesota.

March 28, 1989.

Review Denied May 24, 1989.

Donald G. Clapp, Clapp & Erickson, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey F. Lebowski, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by FORSBERG, P.J., and PARKER and SHORT, JJ.

## OPINION

PARKER, Judge.

Appellant Martin Klotz's driver's license was revoked under the implied consent law. He petitioned for judicial review, contending that the arresting officer did not have specific and articulable facts to support the stop. The trial court sustained the revocation, and Klotz appeals. We affirm.

## FACTS

Trooper Thomas Nelson was on duty on February 19, 1988, when he overheard two radio reports of a drunk driver southbound on Highway 35. The first one originated from Rice County and the drunk driver was reported southbound near milepost 56. Nelson drove to a cross-over north of Owatonna to wait for the vehicle. He then overheard a second report that the vehicle was south of Owatonna. He proceeded southbound to try to find the vehicle and went into the southbound Straight River rest area. He found an unoccupied vehicle matching the broadcast description parked at the rest area. Nelson saw Klotz come out of a building at the rest area, look at him, and then go back into the building. Nelson saw nothing in the way Klotz walked which indicated he was under the influence.

The trooper then went onto southbound 35, south of the rest area, to see whether the vehicle would drive by, but it did not. The trooper went back to the rest area, saw that the vehicle was still there, and backed away from it. A short time later, he saw the same man walk to the car, get into the vehicle and start it, but he did not move it. The trooper pulled forward toward the car and stopped. Klotz got out and again started walking back toward the building. The trooper parked behind Klotz's car, partially blocking it, called out to him, told him to stop, advised him of the report, and asked him to identify himself.

The trooper observed indicia of intoxication. He placed Klotz under arrest for being in actual physical control of a motor vehicle in violation of Minn.Stat. § 169.121, subd. 1 (1986). He read him the implied consent advisory and offered a blood or urine test, which Klotz refused.

Klotz testified that he presently lives in Memphis, Tennessee. At the time of the incident, he was transporting his car and some personal property to Memphis. He stopped at the rest area to use the facilities and to get a cup of coffee. When he left the building, he put on his seat belt, started the car, and put it in reverse. The next thing he recalled was that the officer pulled behind him and stopped him from leaving. Klotz put the car into park and waited for the officer. Klotz rolled down his window and the trooper asked him to get into his squad car. Klotz testified that he had intended to back up his car, but the squad car stopped him from doing so.

## ISSUES

1. Did the trial court improperly rely on incompetent hearsay evidence in making its decision?

2. Did the trooper's actions constitute a seizure of appellant?

3. Did the trooper have specific and articulable facts justifying an investigatory stop?

## DISCUSSION

### I

■ Klotz argues that the trial court improperly relied on the hearsay statements of the police dispatcher and the unknown informants in making its decision. An officer may rely on facts which another person told him to form the basis for reasonable suspicion to stop. *See Olson v. Commissioner of Public Safety*, 371 N.W. 2d 552, 556 (Minn.1985). The issue is whether the anonymous tip provided the requisite reasonable suspicion of ongoing criminal activity. *Id.* at 554.

### II

■ Klotz contends that the tips formed an insufficient basis for the stop. The Commissioner argues that the trooper's ap-

proach of Klotz's parked vehicle did not constitute a seizure under the fourth amendment. Further, the Commissioner contends that the seizure did not occur until the trooper requested identification and asked Klotz to be seated in the squad car, at which point he had made independent observations of indicia of intoxication. He asserts that whether the dispatch information was sufficiently reliable to support a seizure is not determinative.

It is not a seizure for an officer simply to approach and talk to a person standing in a public place or to a driver seated in an already stopped car. *State v. Vohnoutka,* 292 N.W.2d 756, 757 (Minn.1980). If, however, a suspect is ordered out of a vehicle or the police engage in some other action which one would not expect between two private citizens, such as boxing a car in, it is likely that the event will be considered a fourth amendment seizure. 3 W. LaFave, *Search and Seizure* § 9.2(h), at 416–17 (2d ed. 1987). We must determine whether a reasonable person would have believed he was not free to leave. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *State v. Sanger,* 420 N.W.2d 241, 243 (Minn.Ct.App. 1988). The trooper testified that he pulled in behind Klotz's vehicle, blocking it partially, and then called out to Klotz, who had left his vehicle and was walking away, and asked him to stop and identify himself. The officer's show of authority compels the conclusion that a seizure then occurred.

## III

■ The final issue is whether the trooper had specific and articulable facts to stop Klotz. In order to make a valid stop, the police officer must have a "particularized and objective basis for suspecting the particular persons stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), *quoted in Berge v. Commissioner of Public Safety,* 374 N.W.2d 730, 732 (Minn.1985).

The officer must make the assessment on the basis of "all of the circumstances" and may "draw inferences and make deductions—inferences and deductions that might well elude an untrained person."

*Cortez,* 449 U.S. at 418, 101 S.Ct. at 695. The factual basis required to support a stop is minimal, and an actual violation is not necessary. *Marben v. State, Department of Public Safety,* 294 N.W.2d 697, 699 (Minn.1980) (citing *People v. Ingle,* 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975)). "All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity." *Marben,* 294 N.W.2d at 699 (quoting *Ingle,* 36 N.Y. 2d at 420, 369 N.Y.S.2d at 74, 330 N.E.2d at 44).

A telephone tip, when the caller provides sufficient information that he could be located, may provide a basis for a stop. *See City of Minnetonka v. Shepherd,* 420 N.W.2d 887, 890–91 (Minn.1988). In *Olson v. Commissioner of Public Safety,* 371 N.W.2d 552, 556 (Minn.1985), the tip was not sufficient because there was no showing of specific and articulable facts to provide a basis for the caller's assertion of a possibly drunk driver.

In this case, however, the trooper heard two radio reports of a drunk driver and found a vehicle matching the reported description. *See Norman v. Commissioner of Public Safety,* 409 N.W.2d 544, 546 (Minn.Ct.App.1987) (officer justified in investigating when anonymous tips were corroborated by observation that truck was parked in "wrong position"). He observed the driver engaging in furtive behavior; each time the driver saw the trooper, he tried to return to the rest stop building, seeming to avoid him. *See* 3 W. LaFave, *Search and Seizure* § 9.3(c), at 451 (2d ed. 1987). These facts provided a particularized and objective basis to the trooper for suspecting that Klotz was driving while under the influence.

## DECISION

The order of the trial court sustaining the revocation of appellant's driver's license is affirmed.

Affirmed.