**STATE of Minnesota, Respondent,**

v.

**Christine Louise LOPEZ, Appellant.**

**No. A04–1136.**

Court of Appeals of Minnesota.

June 7, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Paul D. Baertschi, Tallen & Baertschi, Minneapolis, MN, for respondent.

Douglas V. Hazelton, Minneapolis, MN, for appellant.

Considered and decided by RANDALL, Presiding Judge; MINGE, Judge; and CRIPPEN, Judge.*

## OPINION

MINGE, Judge.

In this appeal from a conviction for third-degree driving while impaired, appellant challenges the district court's refusal to suppress the evidence and dismiss the charge. Because we find that appellant was seized and that the seizure was based on a reasonable, limited emergency check on appellant's welfare, we affirm.

## FACTS

Appellant Christine Louise Lopez was charged with third-degree driving while impaired in violation of Minn.Stat. §§ 169A.20, subd. 1(1), 169A.26 (2002), and driving with an alcohol concentration of .10 or more in violation of Minn.Stat. §§ 169A.20, subd. 1(5), 169A.26 (2002). On September 21, 2003, an employee from the Kohl's Department Store called police after several customers informed Kohl's that they saw someone unconscious in a car in the parking lot. One customer stated, "[t]here's something weird going down with a car in the parking lot." Around 8:11 p.m., Officer Laurel Slawson responded to the call, entered the Kohl's parking lot with her emergency lights activated,

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

and saw several dozen vehicles in the parking lot. The officer spotted appellant's vehicle legally parked with appellant inside.

With the emergency lights still activated, Officer Slawson partially blocked appellant's vehicle. Neighboring parking spaces were vacant and the officer testified that appellant would have been able to leave by backing up. After parking, the officer approached appellant's vehicle and observed appellant was sitting in the driver's seat, apparently unconscious, her head was against the window, her hands were on her lap, and she was breathing. The officer had to pound on the driver's window five or six times to arouse appellant. When appellant awoke, she appeared disoriented, and Officer Slawson instructed her to unlock and open the door. Appellant struggled to unlock the door, and Officer Slawson assisted by shining her flashlight on the unlock button.

Once appellant unlocked the door, the officer opened the door and smelled alcohol. Additionally, Officer Slawson observed that appellant's eyes were bloodshot, glassy, and watery; her speech was very slurred; and her movements were very slow. Appellant exited her vehicle. Officer Slawson then administered several field sobriety tests, which appellant failed, and a preliminary breath test, which she also failed. Appellant was arrested and charged with two counts of third-degree DWI in violation of Minn.Stat. §§ 169A.20, subd. 1(1), (5), 169A.26.

Appellant moved to suppress evidence seized and sought dismissal of all charges, asserting that she was illegally seized. The district court held a hearing on December 16, 2003, and denied appellant's motion. Appellant waived her right to a jury trial, submitted the case to the district court on stipulated facts and was convicted of one count of driving while under the influence in violation of Minn. Stat. § 169A.20, subd. 1(5). This appeal followed.

## ISSUES

I. Was appellant seized by the officer?

II. If seized, was the seizure constitutional and the evidence obtained admissible?

## ANALYSIS

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999). When there is no factual dispute, "a reviewing court must determine whether a police officer's actions constitute a seizure and if the officer articulated an adequate basis for the seizure." *Id.*

### I.

The first issue is whether the officer "seized" appellant. Both the Minnesota and U.S. Constitutions protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *In re Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn.1993) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968)). In determining whether a seizure has occurred, the court determines whether a police officer's actions would lead a reasonable person under the same circumstances to believe that she was not free to leave. *State v. Hanson*, 504 N.W.2d 219, 220 (Minn.1993). Whether a seizure has occurred depends

on the totality of the circumstances, as applied to a reasonable person. *Harris,* 590 N.W.2d at 98.

Appellant argues that she was seized when Officer Slawson partially blocked appellant's vehicle with the parked squad car, activated the squad car's emergency lights, directed appellant to unlock her door, and opened the door to appellant's vehicle. "A person generally is not seized merely because a police officer approaches him [or her] in a public place or in a parked car and begins to ask questions." *Id.* But, this court has found that the use of a squad car to block a parked vehicle generally constitutes a seizure. *See Klotz v. Comm'r of Pub. Safety,* 437 N.W.2d 663, 665 (Minn.App.1989), *review denied* (Minn. May 24, 1989); *State v. Sanger,* 420 N.W.2d 241, 243 (Minn.App.1988). *But see Erickson v. Comm'r of Pub. Safety,* 415 N.W.2d 698, 701 (Minn.App.1987) (concluding a seizure did not occur when two police officers inadvertently blocked defendant's vehicle in an effort to park as near to building as possible). In *Klotz,* this court found that the defendant was seized because the trooper partially blocked defendant's vehicle with the squad car and then instructed defendant to stop walking away from the vehicle and identify himself. 437 N.W.2d at 665. The court stated "[t]he officer's show of authority compels the conclusion that a seizure then occurred." *Id.* Similarly the court in *Sanger* found that the officer's actions "created a strong show of authority ... and resulted in a seizure" because the officer parked his squad car in such a position that Sanger could not exit, and then activated his flashing lights and beeped his horn when Sanger attempted to back up. 420 N.W.2d at 242–43.

In addition to partially blocking appellant's vehicle, Officer Slawson activated the squad car's emergency lights. The district court concluded that under the *Hanson* standard, these facts did not constitute a seizure. In *Hanson,* the officer saw a vehicle stopped on the shoulder of a highway at night, activated the emergency lights to warn oncoming motorists, and pulled in behind the vehicle to see if the driver needed any assistance. 504 N.W.2d at 219–20. The supreme court held that under the circumstances, the officer's actions "would not have communicated to a reasonable person ... that the officer was attempting to seize the person. A reasonable person would have assumed that the officer was not doing anything other than checking to see what was going on and to offer help if needed." *Id.* at 220. But, the court noted that under many circumstances, an officer's use of emergency lights "would signal to a reasonable person that the officer is attempting to seize the person[.]" *Id.*

*Hanson* is factually distinguishable. Here Officer Slawson activated the squad car's lights and pulled into a parking lot, and not a busy highway, where she did not need to warn oncoming traffic. Also unlike in *Hanson,* here the officer not only used emergency lights, but the officer also partially blocked forward movement of appellant's vehicle, pounded on the driver's window, and opened the driver's door. Based on the totality of the circumstances, we conclude that Officer Slawson's actions created a showing of authority sufficient that a reasonable person would not feel free to leave and that it constituted a seizure.

## II.

The second issue is whether the seizure was constitutional. Whether a seizure is constitutional is a question of law and is reviewed de novo. *See State v. Waddell,* 655 N.W.2d 803, 809 (Minn.2003). One justification is "if an officer has a

particular and objective basis for suspecting the particular person [seized] of criminal activity." *Harris*, 590 N.W.2d at 99 (alteration in original) (quotation omitted). We agree with appellant that nothing in this case indicates that when the officer approached appellant's vehicle, the officer had any articulable basis for suspecting that appellant had engaged in criminal activity.

■■■ In addition to suspicion of criminal activity, an exception to the protections against warrantless seizes and searches exists for emergency situations. *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978); *State v. Terrell*, 283 N.W.2d 529 (Minn.1979); *State v. Auman*, 386 N.W.2d 818 (Minn.App. 1986), *review denied* (Minn. July 16, 1986). In *Mincey*, the U.S. Supreme Court stated:

> We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. The need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal, absent an exigency or emergency. And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities.

437 U.S. at 392–93, 98 S.Ct. at 2413 (quotations and citations omitted). In *Terrell*, the Minnesota Supreme Court quoted the foregoing language from *Mincey* and upheld the warrantless entry into a cabin and the evidence that was discovered on the grounds that the law enforcement officers had reason to believe an assault had occurred, that the victim might still be alive, and that the victim, if alive, was in need of emergency assistance. 283 N.W.2d at 532. In *Auman*, this court adopted a two-part test for use of the emergency exception: (1) is the officer motivated by the need to render aid or assistance; and (2) under the circumstances, would a reasonable person believe that an emergency existed. 386 N.W.2d at 821.

■■■ Generally an officer responding to a call to investigate someone unconscious or sleeping in a vehicle is justified in investigating the welfare of that individual. *See, e.g., State v. Volkman*, 675 N.W.2d 337, 339–42 (Minn.App.2004) (after receiving a call and confirming observation that defendant was slumped over steering wheel, officers lawfully investigated). As part of this investigation the officer must be permitted to make contact with the individual and ensure that the individual does not require additional medical assistance.

Other cases have considered situations of possible driver distress as questions of whether there was a seizure and if so whether there was reasonable suspicion of criminal activity. *See, e.g., State v. Vohnoutka*, 292 N.W.2d 756 (Minn.1980); *Kozak v. Comm'r of Pub. Safety*, 359 N.W.2d 625 (Minn.App.1984); *State Dep't of Pub. Safety v. Juncewski*, 308 N.W.2d 316 (Minn. 1981). In *Kozak*, we stated that the police not only have the right but the duty to investigate and "to offer such assistance as might be needed and to inquire into the physical condition of persons in vehicles." *Id.* at 628.

■■■ Here, a Kohl's employee called and stated that several customers were concerned about someone asleep or unconscious in the parking lot. While the caller was unable to identify the vehicle, Officer

Slawson quickly spotted appellant upon entering the parking lot and corroborated the tip by observing appellant unconscious or asleep in her vehicle. Officer Slawson saw that appellant was breathing, but could not determine her condition without rousing her and communicating. Once awakened, appellant was confused. By knocking on the window, coaching appellant as to how to unlock the door and in the end opening the door, Officer Slawson checked on appellant's welfare.

In our case, the evidence clearly supports the district court's implicit conclusion that the officer believed she was making a welfare check and that under the circumstances this welfare check was reasonable. Only as Officer Slawson was making the check did she smell alcohol on appellant's breath, test for alcohol, and obtain the evidence that ultimately led to appellant being charged with driving while impaired. There is no evidence that the officer used the call from Kohl's as a pretext to seize appellant.[1]

## DECISION

We conclude that the actions of Officer Slawson in activating the flashing lights, partially blocking appellant's vehicle with the police car, and opening the door constituted a seizure, that Officer Slawson determined that she should check on appellant's welfare, that the circumstances justified the character of the check she made, and that the evidence of alcohol consumption and intoxication was admissible.

**Affirmed.**

---

1. If the occupant of the car had awakened and without opening the window or door clearly indicated he was not at risk, we would have a different case. We do not reach the question of whether the officer could detain or open the door of the vehicle absent an indication the occupant could not open the door themselves or an indication of criminal activity.