*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1794**

State of Minnesota,
Respondent,

vs.

Paul Joseph Cunningham,
Appellant

**Filed July 28, 2014
Affirmed
Worke, Judge**

Hennepin County District Court
File No. 27-CR-09-9000

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Zenaida Chico, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Brent S. Schafer, Schafer Law Firm, P.A., Lilydale, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Stauber, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**WORKE**, Judge

Appellant challenges the district court's denial of his motion to suppress evidence obtained after the stop of his vehicle. We affirm.

**FACTS**

During routine patrol in their squad car just after 1:00 a.m. on Monday, February 23, 2009, Minneapolis police officers Efrem Hamilton and Jarrod Silva came upon appellant Paul Joseph Cunningham's apparently unoccupied vehicle as it was parked with its engine running and lights on. The vehicle was located in a private parking lot in an area known to the officers for its gang and other criminal activity, particularly on "Sunday night to Monday morning." The officers shined a light on the vehicle's windshield, and officer Hamilton said he could not see the interior headrests. Hamilton testified that "[i]t seemed like there was something going on, and [he] wanted to make sure everything was okay." They decided to investigate further because the vehicle might be involved in criminal activity and because the circumstances were "odd," "unusual," and "suspicious."

The officers "drove up behind" Cunningham's vehicle without activating lights or a siren.[1] The officers approached the car from either side and shone their flashlights into it, but they could not see inside because of heavy tinting on the vehicle's windows. The officers then shone their lights into the vehicle's windshield and saw Cunningham and his

---

[1]The district court record does not reflect whether the placement of the officers' vehicle blocked Cunningham's vehicle from exiting the parking lot.

passenger who appeared to be sleeping, passed out, or otherwise unconscious. Hamilton knocked on the driver's side window several times, and Silva knocked on a window with his flashlight. According to Hamilton, Cunningham leaned up on his elbows from a reclined position and gave him "the finger." Hamilton noted that Cunningham could not hold his head steady and had red, bloodshot, and watery eyes.

Suspecting that Cunningham was under the influence, Hamilton knocked on the window with his flashlight, illuminated his uniform with the light, and used a loud voice so that Cunningham would know that he was serious. Cunningham initially refused Hamilton's directive to roll down the window, and when he complied by rolling down the window slightly, Hamilton immediately smelled alcohol coming from inside the car. Hamilton next directed Cunningham to roll the window all the way down and get out of his vehicle, but instead Cunningham started to close the window. Hamilton stuck his arm inside the window as Cunningham was closing it, and after Cunningham released his arm Hamilton told Cunningham that he was going to break the window if Cunningham did not get out of the car. After tests showed Cunningham's alcohol concentration to be .08, he was charged with two counts of third-degree driving while intoxicated (DWI).

Cunningham's passenger described a different factual scenario. She stated that she and Cunningham had stopped at a bar/restaurant and had about four drinks. When the officers arrived, she and Cunningham were in the car sobering up and she did not notice the police. The district court found that her inability to recall key facts and her consumption of alcohol undermined her credibility.

Following the omnibus hearing, the district court declined to suppress the evidence obtained from Cunningham, concluding that he was properly seized by police. A jury found Cunningham guilty of one count of third-degree DWI. This appeal followed.

**D E C I S I O N**

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A seizure occurs if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995); *see United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980); *see State v. Lopez*, 698 N.W.2d 18, 21 (Minn. App. 2005) (stating that "[i]n determining whether a seizure has occurred, the court determines whether a police officer's actions would lead a reasonable person under the same circumstances to believe that she was not free to leave"). If "the facts are not in dispute, a reviewing court must determine whether a police officer's actions constitute a seizure and if the officer articulated an adequate basis for the seizure." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). This court "review[s] the district court's findings of fact under a clearly erroneous standard, . . . review[s] its legal determinations de novo," and defers to the district court's credibility determinations. *State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012) (citation omitted).

Not all contacts between police and an individual constitute a seizure. *In re Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn. 1993). A person sitting in a parked car is

4

not seized when an officer merely walks up to the person and asks questions. *Id*. at 782. But when police partially block a vehicle with a squad car, activate emergency lights, pound on the vehicle's window, and open the driver's door, that conduct amounts to a seizure. *Lopez*, 698 N.W.2d at 22. Likewise, parking a squad car to box in a vehicle, activating the squad car's emergency lights, and honking its horn constitutes a seizure. *State v. Sanger*, 420 N.W.2d 241, 243 (Minn. App. 1988).

From the omnibus hearing testimony, the district court concluded that because the officers believed Cunningham's car was unoccupied, their parking "behind" his vehicle could not be objectively viewed as a seizure, and was a legitimate welfare check. When an officer activates a squad car's emergency lights and pulls up behind a vehicle that is parked on a highway shoulder, that officer "would not have communicated to a reasonable person . . . that the officer was attempting to seize the person. A reasonable person would have assumed that the officer was not doing anything other than checking to see what was going on and to offer help if needed." *State v. Hanson*, 504 N.W.2d 219, 219-20 (Minn. 1993). The same sort of welfare check was initiated by the officers here when they parked behind the vehicle, approached to look inside, and awakened the sleeping or unconscious occupants.

This case does not involve the more serious show of police authority that was present and ruled an improper seizure under a totality-of-circumstances test in *Lopez*. *See* 698 N.W.2d at 22. Here, the officers did not activate sirens or flashing lights, initially only shone flashlights into the vehicle, were initially unaware that the vehicle was occupied, knocked on the windows only after they observed the physical state of its

occupants, and directed Cunningham to exit the car only after they observed indicia of intoxication. The initial encounter here was to investigate welfare rather than to immediately seize the driver. *See Klamar*, 823 N.W.2d at 693 (noting that police approach to an already parked vehicle to conduct a welfare check is not a Fourth Amendment seizure).

Cunningham asserts that there is no evidence to support the district court's finding that the officers intended to perform a welfare check on his vehicle. The officers did testify to facts that would support a finding of reasonable suspicion of criminal activity, but the facts also support an alternative finding that police intended to conduct a welfare check; these findings are not mutually exclusive. Hamilton testified that because the vehicle was running and he saw neither a headrest nor a person inside the vehicle, it was "unusual," "odd," and "suspicious," and he wanted to go check out the vehicle. Officer Hamilton testified that he was not initially certain "what kind of incident it was" but that he wanted to investigate why the vehicle was apparently running and unattended. Such circumstances occurring on a February night in Minnesota suggested and supported a welfare check that was later enlarged into an investigation of whether Cunningham was under the influence of alcohol.

While the initial conduct of police was permissible as a welfare check, the welfare check ended when police were able to rouse Cunningham. But by that time, police had reasonable suspicion that Cunningham was under the influence of alcohol. *See State v. Wiegand*, 645 N.W.2d 125, 135 (Minn. 2002) (permitting expansion of scope of traffic stop "to include investigation of other suspected illegal activity" if officer has

6

"reasonable, articulable suspicion of such other illegal activity"). In the month of February, Cunningham and his passenger were asleep or unconscious in a car with its engine running about the time that the bars close. And when he awakened, his eyes were glassy, bloodshot, and red; his head was unsteady; and he gave the police "the finger." When he rolled down his window, he emitted a strong odor of alcohol. These circumstances permitted police to reasonably believe that Cunningham had consumed alcohol and to direct him to leave his car to submit to testing for alcohol consumption. *See LaBeau v. Comm'r of Pub. Safety*, 412 N.W.2d 777, 779-80 (Minn. App. 1987) (holding that a driver's red and bloodshot eyes, odor of alcohol, and slurred speech provided police with reasonable, articulable suspicion to ask the driver to leave the car to take a breath test); *Hager v. Comm'r of Pub. Safety*, 382 N.W.2d 907, 911 (Minn. App. 1986) (holding that officer had reasonable suspicion to administer preliminary breath test when driver's eyes were bloodshot and watery and he smelled of alcohol).

Cunningham specifically challenges several findings that he claims are erroneous and contributed to the district court's ultimate erroneous conclusion that Cunningham was legally seized. First, he claims that the district court erroneously found that the officers "did not activate their overhead lights or siren," because no one testified to this. But the officers testified in detail and sequentially on each step of their encounter with Cunningham. As such, the district court could properly infer from the officers' testimony that something they did not testify to did not occur. *See State v. Stein*, 776 N.W.2d 709, 714 (Minn. 2010) (permitting the district court to make "legitimate inferences" from the record facts). Second, Cunningham challenges the district court's finding that the

officers approached Cunningham's vehicle out of concern that there might be some criminal activity, although the court also found that the area was generally quiet and the officers had not observed any criminal activity or people around the car. Cunningham ignores other facts that suggested the possibility of criminal activity, such as that the car was running and apparently unoccupied at a time of night when and in an area where various types of criminal activity typically occur. Third, Cunningham challenges the district court's finding that his vehicle appeared to be "unoccupied." Officer Hamilton testified that he shone his flashlight through Cunningham's windshield and did not see any headrest or anyone inside the vehicle, and characterized the vehicle as "unattended." This testimony was sufficient to support the district court's finding that the officers believed the vehicle was "unoccupied."

**Affirmed**.