*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0913**

Del Roy Lloyd Wendt, III, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed March 30, 2015
Affirmed
Smith, Judge**

Anoka County District Court
File No. 02-CV-14-163

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Lori Swanson, Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Chutich, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm the district court's order sustaining the revocation of appellant's driver's license because, if a seizure occurred, it was reasonable, and appellant's consent to a breath test was given voluntarily and was not based upon a misstatement of the law.

**FACTS**

A Blaine police officer, while driving in her squad car, came across a vehicle in a ditch. She then saw a vehicle stopped in the road while a person later identified as appellant Del Roy Wendt crossed the street in front of it, walking away from the accident with a dog in his arms. Wendt saw the squad car as it approached the accident but did not stop.

The officer tried to get Wendt's attention to speak to him, but he continued walking away. In order to speak to Wendt, the officer pulled up near him, turned her emergency lights on, exited her vehicle, and called out while approaching Wendt. While talking to Wendt, the officer observed that he was bleeding from the nose, smelled of alcohol, and had bloodshot, watery eyes. After questioning him and conducting field sobriety tests, the officer arrested Wendt for driving while impaired.

The officer handcuffed Wendt, put him in her squad car, then read him the implied consent advisory. The advisory informed Wendt that he was required by Minnesota law to submit to alcohol testing and could be prosecuted for a crime if he refused. Wendt invoked his right to contact an attorney before deciding whether to submit to testing. The officer then transported Wendt to the Blaine Police Department and gave him a phone to

2

contact an attorney. While speaking to the attorney, Wendt asked the officer if she would seek a warrant. The officer replied that she was not required to do so for a breath test. Subsequently, Wendt submitted to a breath test, which reported an alcohol concentration of .22.

Respondent Commissioner of Public Safety revoked Wendt's driver's license, and Wendt petitioned for judicial review. The district court sustained the revocation, concluding that the officer reasonably seized Wendt to conduct a welfare check and to investigate the accident and that the totality of circumstances demonstrated that Wendt validly consented to the breath test.

## DECISION

### I.

Wendt argues that the officer unreasonably seized him after arriving at the accident scene. "We will not reverse a district court's findings regarding the legality of a search and seizure unless the findings are clearly erroneous or contrary to law." *Overvig v. Comm'r of Pub. Safety*, 730 N.W.2d 789, 792 (Minn. App. 2007) (citing *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997)), *review denied* (Minn. Aug. 7, 2007). Both the United States and Minnesota Constitutions prohibit an unreasonable search and seizure by the government. U.S. Const. amend. IV; Minn. Const. art. I, § 10. However, limited seizures to check a person's welfare or to investigate possible criminal activity may be reasonable. *See State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001); *State v. Lopez*, 698 N.W.2d 18, 24 (Minn. App. 2005).

Without deciding whether a seizure took place or at what point Wendt may have been seized, we hold that a seizure was reasonable under the circumstances. A police officer may initiate a limited investigative stop when the officer has a reasonable, articulable suspicion of criminal activity. *Richardson*, 622 N.W.2d at 825. To determine whether an officer has a reasonable suspicion, we look at the totality of the circumstances and must ensure that the stop is not "the product of mere whim, caprice, or idle curiosity." *In re Welfare of M.D.R.*, 693 N.W.2d 444, 448 (Minn. App. 2005) (quotation omitted), *review denied* (Minn. June 28, 2005). The district court may consider the officer's experience, general knowledge, and observations; background information, including the time and location of the stop; and anything else that is relevant. *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987). "The issue is whether objective, reasonable, articulable suspicion of a violation of law existed at the time of the stop." *State v. Beall*, 771 N.W.2d 41, 45 (Minn. App. 2009).

Here, the officer found a single-car accident, which may have been the result of inattentive driving or driving while impaired. The vehicle was empty, and Wendt was the only person walking in the vicinity. Because the officer observed Wendt walking away from the vehicle, carrying a dog in his arms, not merely walking a dog, she inferred that he had come from the vehicle in the ditch. The officer had a duty to investigate why the vehicle was in the ditch, *see Kozak v. Comm'r of Pub. Safety*, 359 N.W.2d 625, 628 (Minn. App. 1984), and had a reasonable basis for suspecting that Wendt was either the driver of the vehicle or a possible witness to the accident. Because the officer had a

4

reasonable suspicion that a law had been violated resulting in the accident, a seizure was reasonable.

In addition, a seizure is reasonable in emergencies when (1) the officer is "motivated by the need to render aid or assistance," and (2) a reasonable person would believe that an emergency existed under the circumstances. *Lopez*, 698 N.W.2d at 23. "[T]he officer must be permitted to make contact with the individual and ensure that the individual does not require additional medical assistance." *Id.*

Again, the officer found a vehicle in a ditch when weather conditions were poor; and, under such conditions, a reasonable person would believe that an emergency existed. The officer suspected that anyone in the car at the time it went into the ditch could be injured and inferred that Wendt had been in the car because he was walking nearby with a dog in his arms. The officer testified that she was concerned for Wendt's welfare. Even though the officer did not observe any injuries to Wendt before making contact with him, such an observation is not a prerequisite. The welfare check is *to determine if* the person is injured, otherwise many would go unassisted because their injuries were not apparent at a distance. And, in fact, on closer inspection, the officer observed bleeding from Wendt's nose, indicating that Wendt was injured. Consequently, a seizure was reasonable as a welfare check as well.

## II.

Wendt next argues that the state did not meet its burden of proof to show that Wendt freely and voluntarily consented to the breath test. A breath test is a search under the Fourth Amendment. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109

5

S. Ct. 1402, 1413 (1989). Warrantless searches are presumed unreasonable, *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992), and any evidence acquired as a result must be suppressed, *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 415-16 (1963); *State v. Askerooth*, 681 N.W.2d 353, 370 (Minn. 2004). However, searches conducted with valid, voluntary consent are an exception. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). The state has the burden of proving voluntary consent by a preponderance of the evidence. *Id.* "The question of whether consent is voluntary is a question of fact, and is based on all relevant circumstances," *Othoudt*, 482 N.W.2d at 222, and we therefore review for clear error, *State v. Cox*, 807 N.W.2d 447, 450 (Minn. App. 2011).

Wendt contends that the evidence shows that he merely agreed to the breath test and his agreement was coerced because he was arrested and "repeatedly told that any attempt to refuse would be considered a crime." However, the Minnesota Supreme Court has held that the implied consent advisory is clear that a choice must be made to submit to testing, that being under arrest at the time the choice is presented "is not dispositive," and that the opportunity to consult an attorney supports a finding of voluntary consent. *Brooks*, 838 N.W.2d at 571-72. Wendt was not just given the opportunity to speak with an attorney, he actually did so. Only after speaking with an attorney and asking the officer questions did Wendt indicate that he understood the advisory and expressly consented to the test. As in *Brooks*, Wendt was not subjected to repeated questioning, did not spend extended time in custody before consenting, or experience any coercive

elements other than being under arrest. The district court did not clearly err in determining that Wendt's consent was voluntary based on the totality of circumstances.

Finally, Wendt argues that his due-process rights were violated because the implied consent advisory and the officer's statement misled him into believing that a warrant was not required and that he must consent to a breath test. Whether Wendt's due-process rights were violated is a question of law, which we review de novo. *See Bendorf v. Comm'r of Pub. Safety*, 727 N.W.2d 410, 413 (Minn. 2007).

Wendt cites *McDonnell v. Commissioner of Public Safety*, 473 N.W.2d 848 (Minn. 1991), in support of the proposition that the implied consent advisory cannot be used to mislead a person about the law. In *McDonnell*, the supreme court held that the advisory was misleading because the appellant in that case was informed that she could be prosecuted for test refusal, when in fact she could not. 473 N.W.2d at 855. At the time, prosecution for test refusal required a prior license revocation, which the appellant lacked. *See* Minn. Stat. § 169.121, subd. 1a (Supp. 1989). Here, Wendt was informed that he could be prosecuted for test refusal, which was legally accurate. *See* Minn. Stat. § 169A.20, subd. 2 (2012). While Wendt again focuses on the use of the term "require" to support his argument that the advisory is misleading, the supreme court has held that the advisory makes clear that one may refuse the test. *See Brooks*, 838 N.W.2d at 571-72.

Wendt also contends that he "tried in vain to exercise the right to a warrant" and was told that one was not necessary in his case, which he argues was a misstatement of the law. However, we have held that a breath test is a reasonable search, even if

7

warrantless, given the weight of the state's interests in preventing drunken driving and ensuring road safety against the diminished expectation of privacy that an individual has when operating a motor vehicle. *Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 726-30 (Minn. App. 2014). Under *Stevens*, the officer did not misstate the law. Because Wendt was not misled, his due-process rights were not violated.

**Affirmed.**