*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0355**

State of Minnesota,
Respondent,

vs.

Sherman Peak,
Appellant.

**Filed March 7, 2016
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-CR-13-27398

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Peter J. Farrell, Special Assistant Public Defender, Faegre Baker Daniels LLP, Minneapolis, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Connolly, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**JOHNSON**, Judge

A Hennepin County jury found Sherman Peak guilty of possessing a controlled substance based on evidence that he engaged in suspicious activity in a park and dropped a small package of crack cocaine when an officer stopped him to investigate. On appeal, Peak challenges the district court's denial of his motion to suppress the evidence that he dropped the crack cocaine after being stopped. He also challenges the district court's denial of his motion *in limine* to prevent a police officer from testifying that he observed Peak engage in a "hand-to-hand transaction" with another person in the park. We conclude that the district court did not err in its rulings on the motions and, therefore, affirm.

## FACTS

On August 20, 2013, at approximately 6:00 p.m., Officer Jeffrey Werner was stationed near the intersection of Chicago Avenue and Franklin Avenue in south Minneapolis, conducting plain-clothes surveillance of Peavey Park. He observed a male wearing blue clothes, who later was identified as Peak, riding a bicycle in the park. He saw Peak approach another man, have a brief conversation, and engage in what appeared to be a "hand-to-hand transaction," although he did not see what, if anything, actually was exchanged. Officer Werner noticed that, as Peak biked away, his right hand was clenched "as if he was holding something." Based on his belief that Peak had engaged in a drug transaction, Officer Werner radioed to other officers in the area, advised them of what he had observed, and gave a description of Peak.

Officer Jeffrey Imming and then-Sergeant Brian Anderson were on patrol nearby, providing backup to the plain-clothes officers who were conducting surveillance. Sergeant Anderson was driving a marked squad car, and Officer Imming was in the passenger seat. Officer Imming testified that Officer Werner radioed that he had observed a man wearing blue engage in a "hand-to-hand transaction" and travel away from the park on a bicycle. Officer Imming testified that Officer Werner "specifically stated that [Peak] had crack cocaine in his right hand."

Officer Imming spotted Peak on a bicycle. Sergeant Anderson pulled the squad car in front of Peak and stopped the car, blocking Peak's forward movement. Officer Imming immediately got out of the squad car and approached Peak. As he did so, he saw that Peak's right hand was closed but then saw Peak open his hand and drop a small item onto the ground. Officer Imming recovered the dropped item, which later tested positive for cocaine.

The state charged Peak with one count of fifth-degree controlled substance crime, in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2012). At an omnibus hearing in August 2014, Peak moved to suppress the evidence gathered by police officers on August 20, 2013. Peak's attorney argued that the officers did not have a reasonable, articulable suspicion to justify an investigatory stop. The state called Officer Werner and Officer Imming to testify at the omnibus hearing. Peak did not introduce any evidence. At the close of the hearing, Peak's attorney made an additional argument in light of the officers' testimony: that the officers arrested Peak as soon as they stopped him and did so without probable cause. The district court denied the motion on the record at the end of

3

the hearing. The district court determined that the officers had reasonable, articulable suspicion to stop Peak. The district court further determined that, after Officer Imming saw Peak drop an item on the ground, the officers had probable cause to arrest Peak. The district court also found that Peak abandoned the dropped item when he voluntarily, intentionally, and unconditionally relinquished his interest in the item by dropping it.

The case was tried to a jury on two days in October 2014. At the outset of trial, Peak moved *in limine* to preclude Officer Werner or any other officer from using the phrase "hand-to-hand transaction" when testifying. Peak argued that the phrase was an opinion that only an expert could offer and that the state had not made any expert disclosures. The district court denied Peak's motion on the ground that the phrase "hand-to-hand transaction" is not an expert opinion but is merely a description of what Officer Werner observed.

The state called four witnesses at trial: Officer Werner, Officer Imming, Lieutenant Anderson (who had been promoted after Peak's arrest), and BCA forensic scientist Eric Grunwald. The jury found Peak guilty. The district court imposed a sentence of 21 months of imprisonment. Peak appeals.

## D E C I S I O N

### I. Motion to Suppress

Peak argues that the district court erred by denying his motion to suppress evidence. Specifically, Peak argues that officers arrested him without probable cause or, in the alternative, stopped him for an investigatory detention without reasonable, articulable suspicion.

4

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.; *see also* Minn. Const. art. I, § 10. As a general rule, a law-enforcement officer may not make a warrantless arrest of a person without probable cause that the person "had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964). But a law-enforcement officer may temporarily detain a person for investigatory purposes if the officer has a reasonable, articulable suspicion that the person has engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 19-21, 88 S. Ct. 1868, 1878-80 (1968); *State v. Diede,* 795 N.W.2d 836, 842-43 (Minn. 2011). In reviewing a district court's ruling on a motion to suppress evidence, this court applies a clear-error standard of review to a district court's factual findings and a *de novo* standard of review to the district court's legal determinations. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted).

We begin by considering Peak's contention that the officers arrested him immediately upon stopping him. Peak wishes to establish that an arrest occurred at that time because an arrest is valid only if it is justified by probable cause. *See State v. Riley*, 568 N.W.2d 518, 523 (Minn. 1997). Peak relies on *In re E.D.J.*, 502 N.W.2d 779 (Minn. 1993), for the proposition that he was seized because "a reasonable person in [his] shoes would have concluded that he or she was not free to leave." *Id.* at 783. But a finding that a person has been "seized" is not equivalent to a finding that a person has been arrested; rather, a finding that a person has been "seized" merely begs the question whether the person has been arrested or merely has been stopped for a brief, *Terry*-style, investigative

5

detention. This proposition is illustrated by *E.D.J.*, in which the supreme court concluded that the juvenile had been "seized" and then proceeded to consider whether the officers had a reasonable, articulable suspicion to justify the seizure, which indicates that the supreme court treated the seizure as an investigatory detention. 502 N.W.2d at 783. The supreme court has noted that "the 'not free to leave' language is unfortunate, because a person who is being detained temporarily is not free to leave during the period of detention, yet that does not convert the detention into an arrest." *State v. Moffatt*, 450 N.W.2d 116, 120 (Minn. 1990).

In Minnesota, whether a law-enforcement officer has arrested (rather than stopped) a seized person depends on "whether a reasonable person would have concluded, under the circumstances, that he was [both] under arrest *and* not free to go." *State v. Beckman*, 354 N.W.2d 432, 436 (Minn. 1984) (emphasis added) (citing *Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319 (1983); *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870 (1980)) (other citations omitted). The fact that a reasonable person may believe that he or she is not free to leave is not determinative; the seized person also must believe that he or she is under arrest, which is determined by an objective standard. *See id.* The supreme court has applied this test to determine whether an investigative detention developed into a "*de facto*" arrest on the ground that "the scope of the detention exceeded constitutional limits." *State v. Blacksten*, 507 N.W.2d 842, 846-47 (Minn. 1993) (citing *United States v. Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568, 1575 (1985)). In *Moffatt*, the supreme court concluded that police officers did not exceed the constitutional limits of a proper investigative detention by detaining a man in a squad car for more than an hour while they conducted an

6

investigation of three detainees, in part because the police officers told the men that they were not under arrest and were merely being detained. 450 N.W.2d at 119-20. In *Blacksten*, the supreme court concluded that the officer immediately arrested the defendant by ordering him to the ground at gunpoint after a traffic stop, handcuffing him, and holding him in a squad car for more than an hour, without doing any investigation whatsoever. 507 N.W.2d at 846.

In this case, the district court found that, when the officers first approached Peak, they did not arrest him but merely stopped him for an investigatory detention. The district court further found that, while Officer Imming was exiting the squad car but before he was within reach of Peak and his bicycle, Officer Imming observed Peak's clenched hand open up and drop an item that Officer Imming suspected was drugs. The district court found that, after Officer Imming saw Peak drop the suspected drugs on the ground, the officer had probable cause to arrest Peak. The district court reasoned that probable cause existed because of Officer Imming's observations and the information that Officer Werner had passed along based on his observation of Peak's actions in Peavey Park.

Peak contends that he was under arrest as soon as he was seized because the officers intended to arrest him and because no reasonable person in his position would have felt free to leave. To reiterate, the test for whether a person is under arrest is "whether a reasonable person would have concluded, under the circumstances, that he was [both] under arrest and not free to go." *Beckman*, 354 N.W.2d at 436 (emphasis added). Because an objective test applies, we look to Officer Imming's outward conduct, not his intentions or motivations. There is no basis in the record for a conclusion that, during the very short

7

period of time between when Sergeant Anderson stopped the squad car and Peak dropped the crack cocaine on the ground, a reasonable person in Peak's position would have believed that he was *both* not free to leave *and* under arrest. *See Beckman*, 354 N.W.2d at 436. This case is distinguishable from *Blacksten*, in which the officer made an arrest by gaining physical control of a suspect, handcuffing him, and detaining him in a squad car. *See* 507 N.W.2d at 846-47. In contrast, when Peak dropped the crack cocaine on the ground, the officers had only blocked Peak's path and begun to walk toward him. This court's caselaw recognizes that an officer may seize a person by using a squad car to block or partially block a suspect's vehicle, *State v. Lopez*, 698 N.W.2d 18, 22 (Minn. App. 2005); *Klotz v. Comm'r of Pub. Safety*, 437 N.W.2d 663, 665 (Minn. App. 1989), *review denied* (Minn. May 24, 1989); *State v. Sanger*, 420 N.W.2d 241, 243 (Minn. App. 1988), and that such a seizure is a proper investigatory detention if the investigating officers had a reasonable, articulable suspicion that the suspect was engaged in criminal activity, *Lopez*, 698 N.W.2d at 23; *Klotz*, 437 N.W.2d at 665; *Sanger*, 420 N.W.2d at 244. Thus, at the time that Peak dropped the crack cocaine on the ground, he was merely being detained for investigatory purposes and was not under arrest.

We continue by considering whether Sergeant Anderson and Officer Imming had a reasonable, articulable suspicion of criminal activity when they stopped Peak. *See E.D.J.*, 502 N.W.2d at 783. A reasonable, articulable suspicion exists if, "in justifying the particular intrusion the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S. Ct. at 1880. The reasonable-suspicion standard is

8

not high, but the suspicion must be "something more than an unarticulated hunch," *State v. Davis,* 732 N.W.2d 173, 182 (Minn. 2007) (quotation omitted), and more than an "inchoate and unparticularized suspicion," *State v. Timberlake,* 744 N.W.2d 390, 393 (Minn. 2008) (quotation omitted). An officer "must be able to point to something that objectively supports the suspicion at issue." *Davis,* 732 N.W.2d at 182 (quotation omitted); *see also Terry,* 392 U.S. at 21–22, 88 S. Ct. at 1880. We consider the totality of the circumstances, including the collective knowledge of all investigating officers, to determine whether reasonable, articulable suspicion existed. *In re Welfare of M.D.R.,* 693 N.W.2d 444, 448–49 (Minn. App. 2005), *review denied* (Minn. June 28, 2005).

The district court found that the investigating officers had a reasonable, articulable suspicion that Peak was engaged in criminal activity. The district court found that Officer Werner had observed Peak engage in a hand-to-hand transaction in Peavey Park. The district court relied on Officer Werner's testimony that his training and experience caused him to believe that Peak had engaged in a drug transaction with another person. The district court also found that Officer Werner saw Peak hold an object in one hand as if he were trying to conceal it. Officer Werner communicated his observations to Sergeant Anderson and Officer Imming, who effectuated the investigatory stop. The evidentiary record supports the district court's findings concerning the information available to the investigating officers and the finding that they had a reasonable, articulable suspicion that Peak had engaged in criminal activity.

Peak contends that the officers did not have a reasonable, articulable suspicion of criminal activity because it is not unlawful to ride a bike in a park and have a brief

9

interaction with another person. But police officers are entitled to draw "inferences and deductions that might elude an untrained person," even from lawful behavior. *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). Peak also compares his case to *E.D.J.*, in which police officers observed three persons standing on a street corner, approached them, and ordered them to stop. *E.D.J.*, 502 N.W.2d at 780. E.D.J. was arrested after he dropped crack cocaine on the ground. *Id.* The supreme court concluded that the officers did not have a reasonable, articulable suspicion to justify the investigatory stop. *Id.* at 783. But the facts of *E.D.J.* were different. Before stopping E.D.J., the officers had no reason to suspect him of criminal activity except the fact that he was standing with two other persons near an intersection that was known for drug-dealing. *Id.* at 780. In this case, the investigating officers had more information. They knew that Peak had engaged in a hand-to-hand transaction with another man and had concealed a small item in his hand as he rode his bike away from the park. In the circumstances of this case, those facts provided the officers with a reasonable, articulable suspicion of criminal activity.

Thus, the district court did not err by denying Peak's motion to suppress evidence on the ground that the investigating officers had a reasonable, articulable suspicion that Peak had engaged in criminal activity. In light of that conclusion, we need not consider Peak's argument that the district court erred by finding that he abandoned the crack cocaine that Officer Imming found on the ground.

## II. Motion *in Limine*

Peak also argues that the district court erred by denying his motion *in limine* to preclude Officer Werner from testifying that he saw Peak engage in a "hand-to-hand

10

transaction." Peak argues that such testimony constitutes an expert opinion and is inadmissible because the state did not make expert disclosures before trial. *See* Minn. R. Crim. P. 9.01, subd. 1(4)(c). This court applies an abuse-of-discretion standard of review to a district court's ruling on a motion *in limine* concerning the admissibility of evidence. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

The district court denied Peak's motion *in limine* on the ground that Officer Werner's testimony that he observed Peak engage in a "hand-to-hand transaction" is admissible under rule 701 of the Minnesota Rules of Evidence, which concerns lay testimony. That rule provides,

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Minn. R. Evid. 701. "Because the distinction between fact and opinion is frequently impossible to delineate, the rule is stated in the nature of a general principle, leaving specific application to the discretion of the trial court." Minn. R. Evid. 702 cmt.

The district court explained that Officer Werner's reference to a hand-to-hand transaction "is a description of what he observed" and specifically found that the testimony is both "rationally based on Officer Werner's perception and helpful to the trier of fact in determining a fact at issue." The record supports the district court's ruling. The district court had ample grounds to find that Officer Werner's inference was "rationally based on [his] perception" because Officer Werner testified in detail about what he observed in

11

Peavey Park. *See id.* The district court also had grounds to find that Officer Werner's inference would be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue" because Officer Werner's inference provided jurors with information that allowed them to determine whether Peak engaged in unlawful conduct, as charged by the state. *See id.*

The state argues in the alternative that, even if the district court erred in its ruling, the admission of the evidence was harmless. We agree. Even without evidence of a "hand-to-hand transaction," the jury would have had ample evidence that Peak possessed controlled substances. Most notable is Officer Imming's testimony that he saw Peak drop an item on the ground shortly after Peak left Peavey Park and that the item later was determined to be crack cocaine.

Thus, the district court did not err by denying Peak's motion *in limine* to preclude Officer Werner from testifying that he saw Peak engage in a "hand-to-hand transaction."

**Affirmed.**