STATE OF MINNESOTA

IN SUPREME COURT

A14-0431

Court of Appeals                                                                    Wright, J.
                                                                Took no part, Hudson, J.

State of Minnesota,

                    Appellant,

vs.                                                              Filed:  February 10, 2016
                                                                Office of Appellate Courts
Jimmy Dawayne Lester,

                    Respondent.

_____


Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County
Attorney, Minneapolis, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant
State Public Defender, Saint Paul, Minnesota; and

Jonathan P. Schmidt, Kathryn M. Short, Special Assistant State Public Defenders, Briggs
and Morgan, P.A., Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

The warrantless search of respondent's car was lawful under the automobile

exception because there was probable cause to believe that the car contained a controlled

substance.

1

Reversed and remanded.

O P I N I O N

WRIGHT, Justice.

In this appeal from a judgment of conviction of third-degree possession of a controlled substance, respondent Jimmy Dawayne Lester argues that the heroin seized from the car he was driving must be suppressed because the police unlawfully searched the car. Although the district court denied Lester's motion to suppress the heroin, the court of appeals reversed after concluding that the police did not have probable cause to arrest Lester or to search the car he was driving. *State v. Lester*, No. A14-0431, 2015 WL 1608701 (Minn. App. Apr. 13, 2015). We hold that the warrantless search of Lester's car was lawful under the automobile exception because there was probable cause to believe that contraband would be found in the car. Therefore, we reverse the decision of the court of appeals and remand to that court to address any remaining issues on appeal.

I.

Appellant State of Minnesota charged Lester with second-degree sale of a controlled substance, Minn. Stat. § 152.022, subd. 1(1) (2014), and third-degree possession of a controlled substance, Minn. Stat. § 152.023, subd. 2(a)(1) (2014), after police found heroin in a rental car that Lester was driving. Prior to trial, Lester moved to suppress the heroin on the ground that the police unlawfully searched the car without a warrant.

Testimony at the pretrial omnibus hearing established the following. On October 26, 2011, Officer Kyle Ruud, who has served with the Minneapolis Police Department for more than 18 years, received a tip from a confidential reliable informant (CRI). Officer

Ruud had worked with this particular CRI for two months. In prior investigations, Officer Ruud had corroborated the CRI's information, had determined it to be truthful, and had used it to recover contraband. Charges were filed as a result of these prior tips. In this case, the CRI told Officer Ruud that a man, nicknamed J., "was going to be delivering a quantity of heroin to the area of Broadway Avenue North and Washington Avenue North" in Minneapolis within "approximately ten minutes" of the CRI's tip. The CRI described J. as "a black male, 28 to 30 years old, approximately five nine, five ten in height, medium build and medium light complexion." The CRI stated that he had personally observed J. "in possession of heroin on several occasions within the past month and also selling heroin to customers within the past month."

Within three minutes of the tip, Officer Ruud set up surveillance at the corner of Broadway and Washington and observed a Dodge Charger parked on Washington. A male in the front passenger seat matched J.'s description. Police officers brought the CRI to this intersection, and the CRI positively identified the passenger in the Charger as J. The driver of the Charger was later identified as Lester. The CRI did not say anything about Lester, the Charger, or where J. stored drugs. Officer Ruud confirmed that all he knew was that "J was going to be delivering a quantity of heroin to Broadway and Washington Avenue North within about ten minutes." A few minutes later, Lester and J. drove to a nearby SuperAmerica gas station and parked near the gas pumps. Lester and J. went inside the gas station and returned to the Charger a few minutes later. Lester got inside the Charger, but J. walked toward a sidewalk on Broadway, north of the gas station. Meanwhile, Lester

3

pulled away from the gas pumps and parked the Charger on the north side of the gas station parking lot.

While on the sidewalk, J. "was talking on the phone, looking back and forth." Officer Ruud believed, based on his experience and training, that J.'s behavior indicated that J. "was waiting for a potential [narcotics] customer to come in the area." J. walked across Broadway into a McDonald's parking lot and "met up with a white male who was in a silver Pontiac Grand Am." Based on what Officer Ruud witnessed, he inferred that "the potential customer that J[.] had been waiting for had arrived in that vehicle and now [J.] got into that vehicle and they met up." Officer Ruud also inferred that Lester, who remained parked at the gas station, appeared to be "waiting for J[.] to return" to the Charger. Officer Ruud explained that, in his experience, it is "typical" for two people to work together with a vehicle to deal narcotics. Often one person "stay[s] with the vehicle" to "keep[] watch on the narcotics" hidden in the vehicle, Officer Ruud testified, while "the other person makes the transactions." Based on the CRI's tip and Officer Ruud's observations and experience, Officer Ruud believed that Lester was using the Charger to facilitate narcotics dealing with J. and that police "would find heroin" in the Charger.

After J. got into the Grand Am and it headed east on Broadway, Officer Ruud ordered other police officers to stop the Grand Am and to arrest all occupants of both the Grand Am and the Charger. The police searched the Charger and found several plastic baggies ("bindles") of suspected heroin concealed behind a panel in the Charger's center console. The bindles field-tested positive for heroin.

4

The district court denied Lester's motion to suppress the heroin, concluding that Lester's arrest was supported by probable cause and that the vehicle search was lawful under both the automobile exception and the search-incident-to-arrest exception. The district court determined that, based on the CRI's tip, the circumstances Officer Ruud observed that were consistent with drug dealing, and Officer Ruud's inferences drawn from his narcotics investigation training and experience, there was probable cause to believe that "there were felony drug sales being committed"; that "[Lester] was acting as a partner with J." in the drug deal; that "[Lester] was aiding and abetting the sale of heroin"; and that "[Lester's] vehicle contained contraband."

After a bench trial, the district court found Lester guilty of third-degree possession of a controlled substance. However, the district court acquitted Lester of second-degree sale of a controlled substance. The court of appeals reversed Lester's conviction, concluding that the district court erroneously denied Lester's motion to suppress because the police did not have probable cause to arrest Lester or to search his car. *State v. Lester*, No. A14-0431, 2015 WL 1608701, at *6 (Minn. App. Apr. 13, 2015). We granted the State's petition for review.

## II.

The State argues that the district court properly denied Lester's motion to suppress. The State contends that the search of Lester's car was lawful under the automobile exception because there was probable cause to believe that contraband would be found in Lester's car. We review de novo a trial court's determination of probable cause as it relates to a warrantless search. *State v. Munson*, 594 N.W.2d 128, 135 (Minn. 1999).

5

The United States Constitution and the Minnesota Constitution protect against "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. A search conducted without a warrant is unreasonable unless it satisfies "one of the well-delineated exceptions to the warrant requirement." *Munson*, 594 N.W.2d at 135.

One such exception is the "automobile exception," under which the police may search a car without a warrant, including closed containers in that car, if there is "probable cause to believe the search will result in a discovery of evidence or contraband." *State v. Search*, 472 N.W.2d 850, 852 (Minn. 1991) (citing *United States v. Ross*, 456 U.S. 798 (1982)). Probable cause exists when "there are facts and circumstances sufficient to warrant a reasonably prudent [person] to believe that the vehicle contains contraband." *State v. Johnson*, 277 N.W.2d 346, 349 (Minn. 1979).

Probable cause is an objective inquiry that depends on the totality of the circumstances in each case. *See State v. Williams*, 794 N.W.2d 867, 871-72 (Minn. 2011); *State v. Perkins*, 582 N.W.2d 876, 878 (Minn. 1998). It is a "common-sense, nontechnical" concept that involves "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *State v. Lee*, 585 N.W.2d 378, 382 (Minn. 1998) (quoting *Ornelas v. United States*, 517 U.S. 690, 695-96 (1996)) (internal quotation marks omitted). In addition, the totality of the circumstances includes reasonable inferences that police officers draw from facts, based on their training and experience, because police officers may interpret circumstances differently than untrained persons. *See State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011); *State v. Harris*, 590 N.W.2d 90, 99 (Minn. 1999). Therefore, an appellate court must give "due weight" to reasonable

inferences drawn by police officers and to a district court's "finding that the officer was credible and the inference was reasonable." *Ornelas*, 517 U.S. at 699-700; *see also State v. Horner*, 617 N.W.2d 789, 795 (Minn. 2000); *Lee*, 585 N.W.2d at 382-83.

Here, a CRI told Officer Ruud that J. would be delivering heroin to a specified location within 10 minutes. The CRI had observed J. possessing and selling heroin several times over the month before. Police officers corroborated the details of the CRI's tip because they observed a man fitting J.'s description arrive at the location identified by the CRI, as a passenger in Lester's car, within the specified timeframe. The trial court properly deemed the CRI to be reliable based on the veracity of the CRI's tips in prior investigations and because the details of the CRI's tip in this case were independently corroborated by police officers. *See Munson*, 594 N.W.2d at 136-37.

In addition, we must afford due weight to the inferences of Officer Ruud that were credited by the district court in its determination of probable cause. *See Ornelas*, 517 U.S. at 699-700; *Horner*, 617 N.W.2d at 795; *Lee*, 585 N.W.2d at 382-83. Officer Ruud testified that, based on his training and experience with narcotics investigations, it is "typical" for two people to work together and use a vehicle to deal narcotics; one person often "stay[s] with the vehicle" to "keep[] watch on the narcotics" in the vehicle, while "the other person makes the transactions." Officer Ruud also observed conduct that he believed, based on his training and experience, was consistent with this type of drug dealing. He saw J. get out of the Charger, look back and forth while talking on his cellphone, walk across the street to a parking lot, and then get into another car that had just arrived, while Lester parked the Charger in a nearby location and remained inside the Charger. Officer Ruud

7

inferred that J. was "waiting for a potential customer" when J. was looking back and forth; that J. met with a potential narcotics customer in the Grand Am; and that Lester "appeared to be waiting for J[.] to return" to the Charger. Based on these observations and his training and experience, Officer Ruud believed that he would find heroin in the Charger. *See Koppi*, 798 N.W.2d at 362 (stating that "probable cause incorporates the . . . intuitions of the officer" because "an officer's training and experience is the lens through which the fact-finder must evaluate the reasonableness of an officer's determination of probable cause"); *Harris*, 590 N.W.2d at 99 (stating that police "may draw inferences and deductions that might elude an untrained person").

Based on the totality of the circumstances, including the CRI's tip, the officer's observations of J. and Lester, and the officer's training and experience, and with due weight given to reasonable police inferences drawn from experience and training, we hold that there was probable cause to believe that Lester's car contained heroin. In other words, there were "facts and circumstances sufficient to warrant a reasonably prudent [person] to believe that [Lester's car] contain[ed] contraband." *Johnson*, 277 N.W.2d at 349. Therefore, the automobile exception is satisfied. *See Search*, 472 N.W.2d at 852.

The court of appeals concluded incorrectly that, although probable cause under the automobile exception "may well have existed" had J. been in the car, it "dissipated" once J. left the car. *Lester*, 2015 WL 1608701, at *6. This conclusion does not properly account for the totality of the circumstances discussed above, including the CRI's corroborated tip, the police officer's training and experience regarding a typical narcotics-dealing method

8

that involves storing drugs in a vehicle, and reasonable police inferences that the conduct of J. and Lester was consistent with this type of narcotics dealing.

Because the search of Lester's car was lawful under the automobile exception, we hold that the district court properly denied Lester's motion to suppress.[1]

### III.

The decision of the court of appeals is reversed. We remand to the court of appeals to address any remaining issues on appeal.

Reversed and remanded.

HUDSON, J., took no part in the consideration or decision of this case.

---

[1] We need not, and do not, address whether probable cause existed for Lester's arrest. The validity of Lester's arrest does not affect our conclusion that the heroin in Lester's car was lawfully seized because the search of Lester's car was supported by probable cause under the automobile exception. *See Chambers v. Maroney*, 399 U.S. 42, 47 n.6 (1970) ("[T]he validity of an arrest is not necessarily determinative of the right to search a car if there is probable cause to make the search.").