JOHNSON, Judge
A Ramsey County jury found John Lee Bowen guilty of simple robbery based on evidence that he took a bottle of liquor from the shelf of a retail liquor store, punched a store employee, and left the store with the bottle of liquor. Bowen challenges the sufficiency of the evidence and the district court's jury instructions. We conclude that the evidence is sufficient to support the conviction of simple robbery because a bottle of liquor is, as a matter of *42 law, "personal property." We also conclude that the district court did not err by instructing the jury that, to find the defendant guilty, the jury must find that the defendant took "a bottle of liquor." Therefore, we affirm.
FACTS
On March 2, 2016, Bowen entered Big Top Liquors, a retail liquor store at the intersection of University Avenue and Snelling Avenue in St. Paul. After Bowen yelled at a cashier, she refused to assist him and told him to leave the store. He did so, but he returned less than an hour later. Bowen again yelled at the cashier, entered her workspace behind the cash register, and pushed products off a shelf onto the floor. Bowen walked to another shelf, took a bottle of liquor, and punched a store manager in the face. Bowen left the store with the bottle of liquor. In a subsequent interrogation, Bowen admitted to a police officer that he took the bottle of liquor without paying for it.
The state charged Bowen with two offenses based on the incident: making a threat of violence, in violation of Minn. Stat. § 609.713, subd. 1 (2016), and simple robbery, in violation of Minn. Stat. § 609.24 (2016). Bowen represented himself in the district court with the assistance of advisory counsel. See Minn. R. Crim. P. 5.04, subd. 2. The case was tried to a jury in August 2016. The state called six witnesses: the cashier, two managers of Big Top Liquors, and three police officers. Bowen did not testify and did not introduce any other evidence.
During the instructions conference, the district court provided the parties with its proposed jury instructions. The district court proposed an instruction on the simple-robbery charge that would require the jury to determine whether "the defendant took a bottle of liquor in the presence of employees of Big Top Liquors." Bowen objected to the district court's proposed instruction on the ground that a bottle of liquor is not "personal property," which is the term used in the simple-robbery statute. Bowen requested an instruction that would have required the jury to determine whether "the defendant took personal property." The district court overruled Bowen's objection, denied his request for an alternative instruction, and gave the instruction that was originally proposed.[1]
In his closing argument, Bowen did not argue that he did not take a bottle of liquor. But he argued that, under Minnesota law, the bottle of liquor at issue is not personal property. The jury found Bowen guilty of simple robbery and not guilty of making a threat of violence. The district court sentenced Bowen to 38 months of imprisonment but stayed execution of the sentence and placed him on probation for five years. Bowen appeals.
ISSUES
I. Is the evidence sufficient to support Bowen's conviction of simple robbery?
II. Did the district court err by instructing the jury to determine whether Bowen "took a bottle of liquor," not whether he "took personal property?"
*43 ANALYSIS
I.
Bowen argues that the state's evidence is insufficient to support his conviction of simple robbery. He contends that that, to prove the offense of simple robbery, the state is required to prove that he took "personal property," which, he contends, means property owned by or belonging to a person (i.e. , a human being), not property owned by or belonging to a business entity.
In general, when this court seeks to determine whether the evidence is sufficient to support a conviction, we undertake "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to" support the conviction. State v. Ortega , 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). In a typical case, we assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." State v. Caldwell , 803 N.W.2d 373, 384 (Minn. 2011) (quotation omitted). If the jury's verdict depends on its resolution of conflicting evidence, "we will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." Ortega , 813 N.W.2d at 100.
If a criminal offender argues on appeal that the state's evidence is insufficient because the facts proved by the state do not satisfy the requirements of the applicable law, our appellate review focuses on the applicable law. See State v. Smith , 899 N.W.2d 120, 122 (Minn. 2017). If a criminal offender's sufficiency-of-the-evidence argument is based on the meaning of a statute, we must engage in statutory interpretation. See State v. Thonesavanh , 904 N.W.2d 432, 435 (Minn. 2017). "The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous." Id. " 'A statute is ambiguous only if it is subject to more than one reasonable interpretation.' " Id. (quoting 500, LLC v. City of Minneapolis , 837 N.W.2d 287, 290 (Minn. 2013) ). If a statute is unambiguous, "then we must apply the statute's plain meaning." State v. Nelson , 842 N.W.2d 433, 436 (Minn. 2014) (quotation omitted). But if a statute is ambiguous, "then we may apply the canons of construction to resolve the ambiguity." Thonesavanh , 904 N.W.2d at 435. When interpreting a statute, we apply a de novo standard of review. Id.
A.
The statute setting forth the offense of simple robbery provides as follows:
Whoever, having knowledge of not being entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.
Minn. Stat. § 609.24 (emphasis added). This statute was enacted in 1963 and has been modified only in minor ways since then. 1963 Minn. Laws ch. 753, art. 1, § 609.24, at 1202; see also 1984 Minn. Laws ch. 628, art. 3, § 11, at 1662; 1986 Minn. Laws ch. 444, at 775-78.
Bowen's argument requires us to interpret section 609.24 to determine the meaning of the term "personal property." Bowen contends that the statute is unambiguous because the plain meaning of the *44 term "personal property" is property owned by or belonging to a person, thereby excluding property owned by or belonging to a business entity. In response, the state contends that the statute is unambiguous because the plain meaning of the term "personal property" is all property that is not real property, regardless whether it is owned by or belonging to a human being or a business entity.
The simple-robbery statute itself does not define the term "personal property." See Minn. Stat. § 609.24. Likewise, chapter 609 of the Minnesota Statutes does not define the term. See Minn. Stat. § 609.02 (2016). Because there is no statutory definition of "personal property," we must look to other sources.
In general, when seeking to determine the meaning of a statute, we begin by looking to "the common and ordinary meaning" of the words used in the statute. Thonesavanh , 904 N.W.2d at 436. Bowen contends that, because the noun "property" is modified by the adjective "personal," the common and ordinary meaning of the two words, when used together, is property "of or pertaining to a person." He further contends that, in light of that meaning, the term "personal property" does not include property owned by or belonging to a business entity. Bowen's proposed interpretation finds some support in lay dictionaries. The word "personal" has been defined to mean "[o]f or pertaining to a particular person," Webster's New International Dictionary 1828 (2d ed. 1946), and "[o]f, pertaining to, concerning or affecting the individual person or self," The Oxford Universal Dictionary 1479 (3d ed. 1964). Furthermore, the statute provides that a person commits simple robbery if he or she "takes personal property from the person or in the presence of another," Minn. Stat. § 609.24, which might suggest that the property taken must be owned by or belonging to the person from whom it was taken.
In response, the state contends that the term "personal property" is a term of art that means any type of property that is not real property. Consequently, the state contends that "personal property" includes property that is owned by or belonging to a business entity. The state's proposed interpretation finds support in both lay dictionaries and legal dictionaries. Two leading lay dictionaries define the term "personal property" to mean "[e]state or property that is not real, consisting in general of things temporary or movable," Webster's New International Dictionary at 1828, and "an estate or property consisting of movable articles both corporeal, as furniture or jewelry, or incorporeal, as stocks or bonds (distinguished from real property )," The Random House Dictionary of the English Language 1446 (2d ed. 1987). In addition, a leading legal dictionary defines "personal property" to mean "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." Black's Law Dictionary 1412 (10th ed. 2014).
The existence of conflicting dictionary definitions may mean that a statute is ambiguous. See Thonesavanh , 904 N.W.2d at 436. In State v. Rick , 835 N.W.2d 478 (Minn. 2013), the supreme court determined that section 609.2241, subdivision 2(2), was ambiguous because the common and ordinary meaning of the word "transfer" was different from the specialized, technical meaning of the word. Id. at 482-85. Similarly, the term "personal property" is ambiguous because the plain meaning of those words " 'is subject to more than one reasonable interpretation.' " Thonesavanh , 904 N.W.2d at 435 (quoting 500, LLC , 837 N.W.2d at 290 ).
*45 B.
Because the statute is ambiguous, we must apply canons of construction to determine its meaning. See id. at 436.
The in pari materia canon (also called the related-statutes canon) is useful in this appeal because it " 'allows two statutes with common purposes and subject matter to be construed together to determine the meaning of ambiguous statutory language.' " Id. at 437 (quoting State v. Lucas , 589 N.W.2d 91, 94 (Minn. 1999) ). The supreme court has applied this canon to construe the simple-robbery statute together with the theft statute, noting that "theft and simple robbery are effectively two degrees of the same crime" and, thus, "share the necessary common purpose and subject matter for application of the in pari materia canon." Id. at 438. The theft statute defines "property" to mean "all forms of tangible property, whether real or personal." Minn. Stat. § 609.52, subd. 1(1) (2016). The theft statute does not give any indication that the term "personal property" means property owned by or belonging to a human being but not property owned by or belonging to a business entity. In applying the in pari materia canon, we presume that " 'a legislative body generally uses a particular word with a consistent meaning in a given context.' " Thonesavanh , 904 N.W.2d at 438 (quoting Erlenbaugh v. United States , 409 U.S. 239, 243, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972) ). Accordingly, we are disinclined "to ascribe one meaning to [a term] in the simple-robbery statute ... but an entirely different meaning to the same [term] in the [theft] statute." Id. Thus, the in pari materia canon supports the state's argument concerning the meaning of the term "personal property."
Another canon that is useful in this appeal is the imputed-common-law-meaning canon, which provides "that '[a] statute that uses a common-law term, without defining it, adopts its common-law meaning.' " Id. (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 320 (2012) ). Before the enactment of the simple-robbery statute in 1963, Minnesota courts consistently used the term "personal property" to mean property that is not real property, even if the property was owned by or belonging to a business entity. See, e.g. , State v. Mancino , 257 Minn. 580, 589, 102 N.W.2d 504, 510 (1960) (referring to clothing taken from business entity as personal property in appeal from conviction of grand larceny); Gustafson v. Equitable Loan Ass'n , 186 Minn. 236, 238-39, 243 N.W. 106, 107 (1932) (referring to diamond ring as personal property); St. Paul Elec. Co. v. Baldwin Eng'g Co., 159 Minn. 221, 223-24, 199 N.W. 9, 9-10 (1924) (concluding that electric power line was personal property); Bretto v. Levine , 50 Minn. 168, 168-69, 52 N.W. 525, 525 (1892) (referring to lamps, tables, chairs, and other items in retail store as personal property).
The common-law meaning of "personal property" was understood by the advisory committee that drafted and recommended language for the simple-robbery statute. In 1955, a commission was created by statute "to study juvenile delinquency, crime and corrections in Minnesota, with a view toward revising and codifying existing laws and recommending improvements," including "recodifying the criminal laws of the state ... in criminal matters." 1955 Minn. Laws ch. 789, 1(h). The commission was authorized to appoint an advisory committee and did so. 1955 Minn. Laws ch. 789, § 3, at 1223; Maynard E. Pirsig, Proposed Revision of the Minnesota Criminal Code , 47 Minn. L. Rev. 417, 417 (1963). The advisory committee issued its report in 1963. Report of Advisory Committee on Revision of the Criminal Code i (1963); see *46 also Bradford Colbert & Frances Kern, A Brief History of the Development of Minnesota's Criminal Law , 39 Wm. Mitchell L. Rev. 1441, 1446 (2013). The advisory committee recommended a one-paragraph statute for the offense of simple robbery. Report, supra , at 153. In an accompanying comment, the advisory committee specifically noted that its recommended language was limited to personal property, as that term was used in the common law: "The Wisconsin act refers to 'property' and so would include real property. It is believed no such problem exists as to robbery of real property as to warrant extending the present Minnesota provision." Report, supra , at 155; see also Minn. Stat. Ann. § 609.24 advisory comm. cmt. (West 2009). This comment demonstrates that the advisory committee was mindful of the common-law meaning of the term "personal property," which means all property that is not real property. The legislature adopted the advisory committee's recommended statute verbatim. Compare 1963 Minn. Laws ch. 753, art. 1, § 609.24, at 1202, with Report, supra , at 153.
Bowen contends in his reply brief that the common-law meaning of the term "personal property" supports his argument. He refers to Eighteenth Century common law and asserts that the "origins of robbery as a crime involved an emphasis on the connection between the victim and the property taken." Our review of the common-law origins of robbery indicates otherwise. Blackstone defined larceny as "the felonious taking, and carrying away, of the personal goods of another," and he defined robbery as a form of larceny: "the felonious and forcible taking, from the person of another, of goods or money to any value, by putting him in fear." 4 William Blackstone, Commentaries on the Laws of England 230, 241 (Legal Classics Library 1983) (1769); see also 3 Wayne LaFave, Substantive Criminal Law §§ 19.2, 20.3, at 74, 222 (2018). Blackstone made clear that the term "personal goods of another" means property that is not real property: "This felonious taking and carrying away must be of the personal goods of another : for if they are things real , or favour of the realty, larciny at the common law cannot be committed of them." Blackstone, supra , at 232. Blackstone's Commentaries gives no indication that the phrase "personal goods of another" refers to property owned by or belonging to a human being as opposed to property owned by or belonging to a business entity. See Blackstone, supra , at 232-34. In any event, under the common law of Minnesota, it is clear that the term "personal property" has a specialized, technical meaning: all property that is not real property. Thus, the well-accepted common-law meaning of the term "personal property" "indicates that we should define the term in accordance with its common-law meaning, consistent with the direction provided by the imputed-common-law-meaning canon." See Thonesavanh , 904 N.W.2d at 439.
Neither party has suggested that any other canon of construction should apply. Because two canons support the state's argument concerning the meaning of the term "personal property," we conclude that the term "personal property," as used in section 609.24, means all property that is not real property, without regard for whether the property is owned by or belonging to a human being or a business entity. By introducing evidence that Bowen took a bottle of liquor from Big Top Liquors, the state satisfied its burden of proving that Bowen took "personal property." Thus, the state's evidence is sufficient to support the jury's verdict that Bowen is guilty of simple robbery.
*47 II.
Bowen argues that the district court erred by instructing the jury that it should determine whether Bowen "took a bottle of liquor," not whether he "took personal property." Bowen's argument has two parts.
A.
Bowen argues that the district court violated his constitutional right to a jury trial by instructing the jury to determine whether he "took a bottle of liquor" rather than whether he "took personal property." He argues that the district court essentially directed a verdict for the state on an element of the offense.
Bowen's argument is based on the United States Supreme Court's opinion in United States v. Gaudin , which described the applicable law as follows:
The Fifth Amendment to the United States Constitution guarantees that no one will be deprived of liberty without "due process of law"; and the Sixth, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." We have held that these provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt. Sullivan v. Louisiana , 508 U.S. 275, 277-278, 113 S.Ct. 2078, 2080-2081 [124 L.Ed.2d 182] (1993). The right to have a jury make the ultimate determination of guilt has an impressive pedigree. Blackstone described "trial by jury" as requiring that "the truth of every accusation , whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbors...." 4 W. Blackstone, Commentaries on the Laws of England 343 (1769) (emphasis added). Justice Story wrote that the "trial by jury" guaranteed by the Constitution was "generally understood to mean ... a trial by a jury of twelve men, impartially selected, who must unanimously concur in the guilt of the accused before a legal conviction can be had. " 2 J. Story, Commentaries on the Constitution of the United States 541, n.2 (4th ed. 1873) (emphasis added and deleted). This right was designed "to guard against a spirit of oppression and tyranny on the part of rulers," and "was from very early times insisted on by our ancestors in the parent country, as the great bulwark of their civil and political liberties." Id. , at 540-541. See also Duncan v. Louisiana , 391 U.S. 145, 151-154, 88 S.Ct. 1444, 1448-1450 [20 L.Ed.2d 491] (1968) (tracing the history of trial by jury).
515 U.S. 506, 509-11, 115 S.Ct. 2310, 2313-14, 132 L.Ed.2d 444 (1995).
The right recognized in Gaudin was vindicated in State v. Moore , 699 N.W.2d 733 (Minn. 2005). The defendant was charged with first-degree assault, which requires proof of "great bodily harm." Id. at 735 (citing Minn. Stat. § 609.221, subd. 1 (2004) ). The term "great bodily harm" was defined by statute to include the "permanent or protracted loss or impairment of the function of any bodily member or organ." Id. at 736-37 (quoting Minn. Stat. § 609.02, subd. 8 (2004) ). The district court instructed the jury that "[t]he loss of a tooth is a permanent loss of the function of a bodily member." Id. at 736. The jury found Moore guilty. Id. On appeal, Moore argued that the jury instruction concerning the loss of a tooth "was improper because it effectively constituted a directed verdict for the prosecution on the element of great bodily harm." Id. at 737. The supreme court agreed, reasoning that the *48 district court "in effect, instructed the jury that the definition of 'great bodily harm' was established," and, thus, "removed from consideration by the jury the question of whether the loss of a tooth constitutes 'great bodily harm,' violating the requirement that criminal convictions must 'rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " Id. (quoting Gaudin , 515 U.S. at 510, 115 S.Ct. at 2313 ). The supreme court also concluded that the denial of the constitutional right to a jury trial is not subject to harmless-error analysis. Id. at 737-38.
Bowen contends that the district court's instruction in this case is like the erroneous instruction in Moore . In response, the state contends that Moore is distinguishable because the jury in that case was required to apply the definition of "great bodily harm" to the evidence in the record and to decide an issue that was primarily a question of fact.
In Gaudin , the Supreme Court reasoned that "the jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." 515 U.S. at 514, 115 S.Ct. at 2316. But the Court explained that "the jury's right to determine both law and fact" exists only if "the question is compounded of law and fact ," as in the case of "a general verdict." Id. at 513-14, 115 S.Ct. at 2315 (quotation omitted). The Court drew a distinction between, on the one hand, "historical facts" and "mixed questions of fact and law" and, on the other hand, "pure questions of law ." Id. at 513, 115 S.Ct. at 2315. In light of that distinction, "the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions." Id. (citing Sparf v. United States , 156 U.S. 51, 105-06, 15 S.Ct. 273, 294-95, 39 L.Ed. 343 (1895) ).
Courts in other states have interpreted Gaudin to mean that a defendant does not have a constitutional right to have a jury decide pure questions of law. For example, in State v. Palmer , 220 P.3d 1198 (Utah 2009), the defendant was convicted of a felony-level driving-under-the-influence offense, which requires two prior convictions within ten years. Id. at 1199-1200. The district court found that the defendant had two qualifying prior convictions within ten years, and the jury found that the defendant had driven a vehicle while under the influence. Id. at 1200. On appeal, Palmer argued that he was denied his constitutional right to a jury trial because the jury should have determined whether he had the requisite prior convictions in light of the evidence that the conduct underlying his prior offenses occurred more than ten years earlier, even though he was sentenced on those offenses less than ten years earlier. Id. at 1201. The Utah Supreme Court rejected his argument, noting that there were no disputes about the existence of the prior convictions, the relevant dates, or the "particular circumstances, events, actions, conditions, or a state of mind." Id. at 1203. The court characterized the issue in dispute as "a pure question of law." Id.
Similarly, in State v. DaSilva , 361 Mont. 288, 258 P.3d 419 (2011), the defendant was convicted of failing to register as a sex offender. Id. at 421. The district court instructed the jury that his prior offense "was a 'sexual offense' " that required registration. Id. On appeal, DaSilva argued that he was denied his constitutional right to a jury trial because the district court instructed the jury in such a way that it essentially directed a verdict on the question whether he was required to register. Id. at 422. The Montana Supreme Court *49 rejected his argument based on the distinction in Gaudin between a factual issue and a pure question of law. Id. at 425. The court concluded that the district court did not err because it merely "instruct[ed] the jury on the law necessary for the jury's rendering of a verdict." Id. (quotations omitted) (alteration in original).
In this case, the district court used the words "bottle of liquor" in its simple-robbery instruction instead of the words "personal property." As a consequence, the jury did not consider whether a bottle of liquor is personal property. But that issue is not a question of fact, nor does it require the application of law to facts. A bottle of liquor is, as a matter of law, personal property. See supra part I. The issue that the jury did not consider is unlike the issue in Moore because the loss of a tooth might or might not constitute "great bodily harm," depending on the circumstances of a particular case. The issue that the jury did not consider is like the issues in Palmer and DaSilva , which were pure questions of law. See Palmer , 220 P.3d at 1203 ; DaSilva , 258 P.3d at 425.
Thus, the district court did not violate Bowen's constitutional right to a jury trial by instructing the jury to determine whether Bowen "took a bottle of liquor."
B.
Bowen also argues that the district court violated Minnesota procedural law by denying his request for an alternative jury instruction that would have required the jury to determine whether he "took personal property." See Minn. R. Crim. P. 26.03, subd. 19.
A district court must instruct the jury in a way that "fairly and adequately explain[s] the law of the case" and does not "materially misstate[ ] the applicable law." State v. Koppi , 798 N.W.2d 358, 362 (Minn. 2011). An appellate court reviews jury instructions "as a whole to determine whether [they] accurately state the law in a manner that can be understood by the jury." State v. Kelley , 855 N.W.2d 269, 274 (Minn. 2014). A district court has " 'considerable latitude' in selecting language for jury instructions." State v. Gatson , 801 N.W.2d 134, 147 (Minn. 2011). Accordingly, this court applies an abuse-of-discretion standard of review to a district court's jury instructions. Koppi , 798 N.W.2d at 361.
At the instructions conference, Bowen requested a jury instruction that would have required the jury to determine whether he "took personal property." The district court denied Bowen's request and instructed the jury to determine whether he "took a bottle of liquor in the presence of employees of Big Top Liquors." Bowen contends that the district court erred because his requested instruction is an accurate statement of law and is related to his theory of the case.
As stated above, a district court has "considerable latitude" in choosing the language of jury instructions. Gatson , 801 N.W.2d at 147. This court reviews a district court's jury instructions only to determine whether the district court abused its discretion. Koppi , 798 N.W.2d at 361. A district court does not abuse its discretion so long as its instructions "fairly and adequately explain the law of the case" and do not "materially misstate[ ] the applicable law." Id. at 362. If a district court's instructions satisfy those criteria, there is no error, even if an alternative instruction also would have fairly and adequately explained the law of the case without materially misstating the applicable law. See State v. Kuhnau , 622 N.W.2d 552, 555-56 (Minn. 2001). In this case, the district court likely would not have abused its discretion if it had given Bowen's requested *50 instruction. But the district court exercised its discretion and decided to instruct the jury using the phrase "took a bottle of liquor." In light of our resolution of Bowen's statutory-interpretation argument, see supra part I, the district court "fairly and adequately explain[ed] the law of the case" and did not "materially misstate[ ] the applicable law." See Koppi , 798 N.W.2d at 362.
Thus, the district court did not abuse its discretion by denying Bowen's request for a jury instruction that would have required the jury to determine whether he "took personal property."
DECISION
The evidence is sufficient to support Bowen's conviction of simple robbery. The district court did not err by instructing the jury to determine whether Bowen "took a bottle of liquor."
Affirmed.

The state asserts that the district court followed a pattern jury instruction that contains blanks, which suggests that a district court should fill in the blanks with a description of the item allegedly taken. The pattern instruction states that the first element of the offense is as follows: "First, the defendant took _______ (from the person of) (in the presence of) _______." 10 Minnesota Dist. Judges' Ass'n, Minnesota Practice-Jury Instruction Guides § 14.02, at 725 (West 6th ed. 2015).