*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0797**

State of Minnesota,
Respondent,

vs.

Matthew Starnes,
Appellant.

**Filed May 6, 2024**
**Affirmed**
**Connolly, Judge**

Washington County District Court
File No. 82-CR-21-2691

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kevin M. Magnuson, Washington County Attorney, Andrew T. Jackola, Assistant County
Attorney, Stillwater, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Peter H. Dahlquist, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Connolly, Judge; and

Jesson, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**CONNOLLY**, Judge

In this direct appeal from the judgment of conviction for unlawful possession of a firearm and ammunition and fleeing a peace officer by means other than a motor vehicle, appellant argues that the district court erred by (1) determining that neither appellant nor his vehicle were improperly seized, (2) determining that law enforcement had probable cause to search his vehicle, (3) determining that the evidence at trial was sufficient to prove beyond a reasonable doubt that he possessed a firearm, and (4) directing a verdict on one element of the crime of fleeing a peace officer by means other than a motor vehicle. We affirm.

## FACTS

The facts below are taken from testimony and exhibits presented during the underlying suppression hearings as well as from other documents in the record.

Just after midnight on August 8, 2021, Oakdale law enforcement responded to a call of a suspicious vehicle "driving circles around [a private church] parking lot." Upon arrival, Officer 1 observed that the vehicle described by the caller was parked in the church parking lot. Without activating his police siren or emergency lights, Officer 1 pulled in behind the vehicle. After running the license plate, Officer 1 approached the vehicle to identify any occupants. Appellant Matthew Starnes was found sleeping in the backseat of the vehicle. Officer 1 asked appellant whether he needed resources or a place to stay. After appellant declined those services, Officer 1 asked appellant whether he had identification; appellant stated that he did and immediately retrieved it.

Meanwhile, Officer 2 arrived at the scene and walked toward the vehicle and shined a light into the vehicle to ensure that no other occupants were inside. Officer 2 observed a glass pipe on the passenger seat. Based on his experience and training, Officer 2 concluded that the glass pipe was likely used to smoke controlled substances. Officer 2 communicated to Officer 1 and appellant that he planned to search appellant's vehicle for contraband and other drug paraphernalia. The squad-camera footage shows appellant, who had exited the vehicle, verbally protested the search while shutting and locking his vehicle's doors. The officers then directed appellant toward the squad car. The officers told appellant twice to stand near the squad car before appellant fled on foot. While the officers apprehended appellant, Officer 3 arrived at the scene. Officer 3 shined his flashlight in appellant's vehicle and observed a gun sticking halfway out from under the driver's seat. Approximately 15 minutes later, officers had secured appellant. At that time, officers searched appellant's vehicle.

During the search of appellant's vehicle, officers recovered a 9mm handgun under the driver's seat and a multicolored glass pipe from the passenger seat. Appellant was arrested and his vehicle impounded. The complaint alleged that appellant's previous convictions made him ineligible to possess a firearm. Respondent State of Minnesota charged appellant with possession of a firearm or ammunition by an ineligible person and fleeing a peace officer by means other than a motor vehicle.

In April 2022, appellant moved to suppress the evidence found in the search of his vehicle, arguing that the warrantless search violated his rights under the Fourth Amendment. The district court denied appellant's motion, concluding that there was

3

probable cause for the officers to search appellant's vehicle under the automobile exception to the warrant requirement.

The next month, the district court granted appellant's motion to discharge his court-appointed counsel and proceed pro se. The district court also appointed advisory counsel for appellant. Appellant then moved the district court to suppress the evidence found in the search of his vehicle, arguing that he was subject to an unreasonable seizure before Officer 2 observed the glass pipe. The district court denied the motion.

A two-day jury trial was held in December 2022. The jury heard from five witnesses, including appellant. Officers 1 and 2 testified consistent with their testimony at the contested omnibus hearing and the squad-camera footage. Officer 3 testified to observing a gun sticking halfway out from under the driver's seat. And a forensic expert testified that, after examining the firearm found in appellant's vehicle, she found "insufficient genetic information" to determine who handled the weapon.

Appellant testified that he co-owns his vehicle with his girlfriend. He explained that they both own a set of keys to the vehicle but his girlfriend never drives the vehicle and keeps her keys at her mother's house. Appellant noted that his girlfriend's adult children often have access to the vehicle while he is at work. Appellant also testified that he lives in the vehicle on the weekends to avoid his girlfriend's children. On the night of appellant's arrest, he testified that his girlfriend's daughter drove him and the vehicle to the church parking lot before leaving to see her boyfriend.

The jury found appellant guilty as charged. The district court entered judgments of conviction on both counts. Appellant was sentenced to 60 months in prison for unlawful

4

possession of a firearm and 90 days in jail for fleeing a peace officer by means other than a motor vehicle with credit for time served.

This appeal follows.

## DECISION

**I.** **The district court did not err in denying appellant's motion to suppress evidence because appellant was not unlawfully seized.**

"When reviewing a district court's pretrial order on a motion to suppress evidence, the district court's factual findings are reviewed under a clearly erroneous standard. But legal determinations, such as whether there was a seizure and, if so, whether that seizure was unreasonable, are reviewed de novo." *State v. Eichers*, 853 N.W.2d 114, 118 (Minn. 2014) (citation omitted). "Findings of fact are clearly erroneous if, on the entire evidence, we are left with the definite and firm conviction that a mistake occurred." *State v. Andersen*, 784 N.W.2d 320, 334 (Minn. 2010).

The United States and Minnesota Constitutions prohibit "unreasonable searches and seizures" by the government. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. Generally, a warrantless seizure is per se unreasonable. *State v. Dotson*, 900 N.W.2d 445, 450 (Minn. App. 2017). But not all interactions between law enforcement and citizens constitute seizures. *In re Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn. 1993). "A seizure occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995) (quotations omitted). In determining whether a seizure has occurred, we assess whether, under the totality of the circumstances, "a reasonable person would have believed that he

5

or she was neither free to disregard the police questions nor free to terminate the encounter." *Id.*

Appellant argues in his principal brief and pro se supplemental brief that the district court erred by denying his motion to suppress the firearm evidence found during the search of his vehicle because he was unlawfully seized both when Officer 1 (A) parked behind his vehicle, blocking him in; and (B) approached his vehicle on foot, suggested he exit the vehicle, and asked him whether he had identification. The parties do not dispute that appellant was seized after Officer 2 stated that he would search the vehicle.

### A. Appellant was not seized when Officer 1 parked his squad car behind appellant's vehicle.

Generally, a person is not seized "merely because a police officer approaches him in a public place or in a parked car and begins to ask questions." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999); *see State v. Vohnoutka*, 292 N.W.2d 756, 757 (Minn. 1980) (explaining that generally a person is not seized when "an officer . . . simply walk[s] up and talk[s] to a person standing in a public place or to a driver sitting in an already stopped car"). Rather, officers must "convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 435 (1991). A seizure will occur when an officer orders a person out of their vehicle and summons them to "the officer's squad car to provide identification and to respond to questioning." *State v. Day*, 461 N.W.2d 404, 407 (Minn. App. 1990), *rev. denied* (Minn. Dec. 20, 1990).

The district court determined that appellant was not seized when Officer 1 pulled in behind him because appellant's "vehicle was in no way impeded from movement toward

6

the passenger side of the vehicle" and he had "sufficient distance between his vehicle and [Officer 1's squad car] to back up slightly and then drive away while still on [the] pavement" or through "the grassy area in front of his vehicle." Appellant argues that under these circumstances a reasonable person would not feel free to terminate the encounter by driving off the pavement or through the grass.

Appellant relies on *State v. Lopez*, 698 N.W.2d 18, 22 (Minn. App. 2005), to support his argument that, because Officer 1 parked his squad car behind appellant's vehicle, blocking him in, he was seized. But *Lopez* is distinguishable. In *Lopez*, this court concluded that Lopez was seized when an officer unnecessarily activated his squad-car lights when pulling into a parking lot to question Lopez, partially blocked Lopez's forward movement, pounded on the driver-side window, and opened the driver's door. 698 N.W.2d at 22. In that case, the officer's actions created a show of authority sufficient to cause a reasonable person to believe they were not free to leave and constituted a seizure. *Id.*

Here, Officer 1 woke appellant by shining his flashlight into the vehicle; he did not pound on the window, open the vehicle's door, block appellant's forward movement, or activate his squad-car lights. While the squad-camera footage suggests that driving away might have been difficult for appellant, we are not persuaded that the totality of the circumstances amounts to a seizure.[1] Instead, we conclude that this case is more akin to *Vohnoutka*.

---

[1] Appellant also relies on *State v. Miller*, No. A20-0558, 2021 WL 1522665, *7 (Minn. App. Apr. 19, 2021). But *Miller* is neither binding nor persuasive. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c) (stating that nonprecedential opinions are not binding authority). In *Miller*, this court recognized "the dynamic that exist[ed]" when police officers interacted

7

In *Vohnoutka*, the Minnesota Supreme Court held that a defendant was not temporarily seized when officers drove behind the defendant's car—which had entered a closed service station—and "asked [the] defendant if there was anything wrong." 292 N.W.2d at 757. In that case, a second "officer routinely walked up to [the] defendant's car and shined his flashlight through the window into the passenger compartment to see if there was anyone in the car." *Id.* While looking in the window, the officer discovered marijuana. *Id.* The supreme court held that the officer's discovery of marijuana gave him probable cause to search the car for more marijuana. *Id.*

The circumstances here are not fundamentally different from those in *Vohnoutka*. Officer 1 parked behind appellant's stopped vehicle after receiving a call that the car was "driving circles" in a church parking lot without permission. Officer 1 did not activate his sirens or emergency lights when contacting appellant. After shining his flashlight to identify any other occupants in appellant's vehicle, Officer 2 observed the glass pipe in plain view. Therefore, under the totality of the circumstances, appellant was not seized when Officer 1 parked behind appellant's vehicle.

---

with Miller, a "young Black man," when it determined that "a reasonable person in Miller's position would not have felt free to ignore the police instructions and end the encounter." 2021 WL 1522665, at *7. The court reasoned that, although officers were generally polite to Miller while offering him services, officers had positioned their squad car in front of Miller's vehicle and directed Miller into the back of their squad car. *Id.* Here, although appellant is also a young African American man, officers did not park in front of appellant's vehicle nor did they direct appellant into the back of their squad car before discovering the glass pipe.

**B.      Appellant was not seized when Officer 1 made initial contact with him.**

Appellant also argues that he was seized when Officer 1 suggested he exit his vehicle and inquired into whether he had identification. We disagree. This court has held that an officer's approach to a car "to check on the welfare of its occupants was not a seizure." *State v. Klamar*, 823 N.W.2d 687, 693 (Minn. App. 2012). In *Klamar*, this court concluded that Klamar was not seized until the officer ordered Klamar to exit her vehicle and approach the officer's squad car because, at that point, Klamar had admitted consuming alcohol and "reasonably would have concluded that she was not free to disobey the order." *Id.* Similarly, in *Day*, this court held that an officer seized Day when they ordered him out of his vehicle, summoned him to the officer's squad car, asked for identification, and questioned him. 461 N.W.2d at 407.

The facts here are distinguishable from those in *Klamar* and *Day*. Appellant was sleeping when Officer 1 approached his vehicle to conduct a welfare check. Appellant then woke up, opened his car door himself, and asked Officer 1 if he should exit his vehicle. Officer 1 responded, "Yeah . . . I can try and find some resources [if] there is somewhere you're trying to stay or something like that." Officer 1 then asked appellant if he had identification, which appellant procured without contest. At that point, appellant had not made any incriminating statements. Rather, Officer 1 offered appellant resources after learning that appellant did not have a place to stay "at the moment," expressing to appellant that he wanted to "make sure [appellant was] alright." Officer 1 also told appellant that he was not in trouble and explained that they were investigating a suspicious-person report. Officer 1 did not order appellant to approach the squad car until after the glass pipe was

9

observed in plain view. Under the totality of the circumstances, Officer 1's initial contact with appellant was not a seizure.

Moreover, Officer 1 was justified in conducting a welfare check on appellant. When an officer responds to a call that a person is unconscious or asleep in a vehicle, the officer is justified in investigating that person's welfare. *Lopez*, 698 N.W.2d at 23. To carry out the investigation, "the officer must be permitted to make contact with the individual and ensure that the individual does not require additional medical assistance." *Id.*; *see Kozak v. Comm'r of Pub. Safety*, 359 N.W.2d 625, 628 (Minn. App. 1984) (emphasizing that officers have a duty "to offer such assistance as might be needed and to inquire into the physical condition of persons in vehicles"). In *Lopez*, this court held that reports from concerned store employees that someone was asleep in a vehicle in the store parking lot justified the officer's welfare check on the vehicle's occupant. 698 N.W.2d at 23-24.

Here, Officer 1 responded to a call from a church employee who reported that a suspicious vehicle was driving in circles in the church parking lot just after midnight. Officer 1 drove to the scene to investigate and found a vehicle that matched the caller's description parked in the church's parking lot without permission. The record reflects, and appellant agrees, that officers also received information that a person in the same vehicle was sleeping inside the vehicle. When Officer 1 looked inside the vehicle, he observed appellant sleeping. Once appellant opened the vehicle's door, Officer 1 asked appellant whether he needed any resources or a place to stay, and whether he was "alright." Under the circumstances here, we conclude that Officer 1's actions constitute a welfare check and not a seizure.

10

In sum, the district court did not err in denying appellant's motion to suppress the evidence based on unlawful seizure.

## II. Law enforcement had probable cause to search appellant's vehicle.

"Warrantless searches are presumptively unreasonable unless one of a few specifically established and well-delineated exceptions applies." *State v. Licari*, 659 N.W.2d 243, 250 (Minn. 2003) (quotation omitted). It is the state's burden to prove that an exception applies. *Id.* One exception to the warrant requirement is the "automobile exception," under which a police officer may search a vehicle without a warrant, including closed containers in that vehicle, if there is "probable cause to believe the search will result in a discovery of evidence or contraband." *State v. Lester*, 874 N.W.2d 768, 771 (Minn. 2016) (quotations omitted).

"Probable cause is an objective inquiry that depends on the totality of the circumstances in each case." *Id.* The totality of the circumstances is a "common-sense, nontechnical concept that involves the factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians, act." *Id.* (quotations omitted). When determining whether probable cause exists, "appellate court[s] must give due weight to reasonable inferences drawn by police officers and to a district court's finding that the officer was credible and the inference was reasonable." *Id.* (quotations omitted); *Cripps*, 533 N.W.2d at 391 (explaining that law enforcement "may draw inferences and deductions that might elude an untrained person").

Appellant asserts in his pro se supplemental brief that the district court erred in determining that officers had probable cause to search his vehicle based on the presence of

the glass pipe and the officers' inferences that the glass pipe was used for illegal activity. We disagree.

Based on the totality of the circumstances present at the time officers searched appellant's vehicle, we conclude that there was a fair probability that a search of appellant's vehicle would produce contraband or evidence of a crime. First, officers responded to a report of a suspicious person in a private church parking lot after midnight as well as information that the person was sleeping in their vehicle. And Officer 1 testified that the officers who later searched appellant's vehicle had "see[n] the original stop." *See State v. Riley*, 568 N.W.2d 518, 523 (Minn. 1997) ("When more than one officer is involved in an investigation, Minnesota uses the 'collective knowledge' approach to determine whether probable cause existed."). Second, Officer 2 testified that he observed a glass pipe in plain view[2] on the front seat of appellant's vehicle. Third, the officers had experience as patrol officers and testified that, based on their experience and training, the glass pipe could be used to ingest controlled substances. *See State v. Lembke*, 509 N.W.2d 182, 184 (Minn. App. 1993) (holding that an officer's seizure of a marijuana bag was valid under the plain-view exception to the warrant requirement because, although "[a] bag has many legitimate uses," it is not improper for an officer to rely on their "trained intuition and observations drawn from [their] experience" to determine it likely contains contraband). Fourth, when

---

[2] Appellant does not dispute that Officer 2 properly observed the glass pipe under the plain-view exception to the warrant requirement. *See Vohnoutka*, 292 N.W.2d at 757 (concluding that an officer's use of a flashlight to look inside a parked vehicle was not unconstitutional because the car's occupant was not seized and the officer had a right to look into the passenger compartment to check for other occupants).

asked by Officer 2 whether appellant had "anything" (marijuana) in his vehicle, appellant said, "Yes," but maintained that he had done nothing illegal and did not want the officers to search his vehicle. *See State v. Willis*, 320 N.W.2d 726, 728 (Minn. 1982) (recognizing that when a defendant acts suspiciously, as if trying to conceal something, the defendant's failure to provide an explanation may increase an officer's grounds for suspicion). Fifth, appellant protested the search by locking his car doors and fleeing on foot. *See State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992) (considering defendant's evasive conduct). Sixth, before officers apprehended appellant and searched the vehicle, Officer 3 observed a firearm sticking out from under the front seat of the vehicle in plain view.

Appellant does not argue that he was improperly seized at the point that Officer 2 observed the glass pipe. And appellant points to no authority to support his contention that law enforcement are prohibited from considering information that occurred before commencing a search simply because an officer stated their intention to conduct a search when the preceding seizure was not unlawful. Accordingly, we discern no error in the district court's determination that the officers' search was supported by probable cause.

Appellant also points to *State v. Koppi*, 798 N.W.2d 358, 365 (Minn. 2011), to support his argument that evidence of the glass pipe, without evidence showing the glass pipe was used for illegal purposes, was insufficient to establish probable cause. *Koppi* is inapposite, as that case involved the jury instruction related to the element of probable cause to suspect a person of driving while impaired not possession of drug contraband. *Id.* at 362. Further, even "[o]bservation of apparently innocent acts can be significant to a trained officer and . . . the officer is entitled to assess probable cause in light of his

13

experience." *State v. Anderson*, 439 N.W.2d 422, 426 (Minn. App. 1989) (quotations omitted), *rev. denied* (Minn. June 21, 1989); *State v. Hawkins*, 622 N.W.2d 576, 581 (Minn. App. 2001) (citing *Anderson*).

Appellant further argues that Officer 2 was required to show that appellant "intentionally or knowingly" used the glass pipe for illegal activity to establish probable cause. *See* Minn. Stat. § 152.01, subd. 18(b) (2020) (defining "drug paraphernalia" as equipment or products that a person "knowingly or intentionally" uses to make or ingest controlled substances). We are not persuaded. Appellant's argument would require officers to prove beyond a reasonable doubt that appellant possessed "drug paraphernalia," as defined by statute, before conducting a search. Probable cause to search does not require such a high standard of certainty. *See State v. Harris*, 589 N.W.2d 782, 790 (Minn. 1999) ("The evidence necessary to support a finding of probable cause is significantly less than that required to support a conviction.").

In sum, law enforcement had probable cause to search appellant's vehicle and the district court did not err by denying appellant's motion to suppress on that basis.

### III. The evidence presented at trial was sufficient to prove beyond a reasonable doubt that appellant possessed the firearm.

Appellant asserts in his principal brief that there was insufficient evidence to support his conviction of possessing a firearm while ineligible. At trial, respondent presented circumstantial evidence that appellant possessed the firearm discovered in his vehicle by showing that appellant knew or should have known that the firearm was in his vehicle.

14

Appellant asserts that the evidence presented to the jury supports a rational hypothesis that someone else owned and placed the firearm in his vehicle.

When considering a sufficiency-of-the-evidence challenge, we carefully review the record to determine "whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016) (quotation omitted). But "[a] conviction based on circumstantial evidence . . . warrants heightened scrutiny," requiring us "to consider whether the reasonable inferences that can be drawn from the circumstances proved support a rational hypothesis other than guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted).

To convict appellant of possessing a firearm while ineligible, the state had to prove beyond a reasonable doubt that "in relevant part[,] [appellant] knowingly possessed the firearm." *State v. Harris*, 895 N.W.2d 592, 601 (Minn. 2017). "Possession may be proved through evidence of actual or constructive possession." *Id.* Actual possession is proved by showing an individual physically possessed an item. *State v. Florine*, 226 N.W.2d 609, 610 (Minn. 1975). Constructive possession is proved by showing that either the object was found "in a place under defendant's exclusive control to which other people did not normally have access" or that it was found "in a place to which others had access" and "there is a strong probability (inferable from other evidence) that [the] defendant was at the time consciously exercising dominion and control over it." *Id.* at 611. The latter requires a strong inference "that the defendant at one time physically possessed the [object] and did not abandon his possessory interest in the [object] but rather continued to exercise

15

dominion and control over it up to the time of the arrest." *Id.* at 610. We look to the totality of the circumstances when assessing whether constructive possession has been proved. *State v. Munoz*, 385 N.W.2d 373, 377 (Minn. App. 1986). And we will uphold a conviction if the jury could reasonably conclude that the defendant committed the charged offense. *Davis v. State*, 595 N.W.2d 520, 525 (Minn. 1999).

Because the firearm here was not found on appellant's person, he was not in actual possession of the firearm and the constructive possession doctrine applies. Assuming that appellant did not have exclusive control over the vehicle where the firearm was found because he co-owned the vehicle with his girlfriend, and others regularly had access to the vehicle, respondent was required to prove that there was a strong probability that, at the time of the arrest, appellant was consciously exercising dominion and control over the firearm found in his vehicle.

Respondent relied on circumstantial evidence to prove that appellant possessed the firearm and ammunition. Circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *Harris*, 895 N.W.2d at 599 (quotation omitted). We apply a two-step analysis to assess the sufficiency of circumstantial evidence. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012). First, we identify the circumstances proved. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013).

Second, we review the identified circumstances as a whole, to determine whether they are consistent with guilt and inconsistent with any rational hypothesis except that of guilt, not simply whether the inferences that point to guilt are reasonable. *Id.* at 599. We give no deference to the jury's choice between reasonable inferences. *Id.* The

16

circumstances proved "must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *Al-Naseer*, 788 N.W.2d at 473 (quotation omitted).

These circumstances were proved by respondent at trial: (1) after midnight on August 8, 2021, Officer 1 found appellant alone, sleeping in the backseat of his vehicle while parked in a private parking lot without permission; (2) when law enforcement told appellant they would search his vehicle, appellant objected, locked his vehicle, and fled on foot; (3) law enforcement found a firearm and ammunition under the driver's seat in appellant's vehicle; (4) appellant co-owned the vehicle with his girlfriend and both had their own keys to the car; (5) appellant's girlfriend "never drove" the vehicle; (6) appellant's girlfriend kept her keys at her mother's house where others had access to the keys; (7) appellant lived with his girlfriend except on weekends when he lived in his car; (8) appellant was living in his vehicle on the night of his arrest; (9) DNA evidence from the firearm was inconclusive; and (10) appellant has felony convictions that make him ineligible to possess a firearm.

The circumstances here support the reasonable inference that appellant constructively possessed the firearm and ammunition found in his vehicle by exercising dominion and control over the firearm. First, officers observed the handgun sticking out from under the front seat of appellant's vehicle. Second, the forensic expert testified that inconclusive genetic testing from a firearm "is a fairly common result." Third, there was no one else in appellant's vehicle at the time officers contacted appellant, and appellant called no witnesses to testify to owning the gun. Nor did appellant's girlfriend's daughter

17

testify to driving appellant to the church parking lot. Fourth, the record reflects that appellant resisted officers' efforts to search his vehicle by shutting the vehicle's door, locking the vehicle, and fleeing with the keys, suggesting that he knew that evidence of a crime was present in the vehicle. And while appellant's testimony established that others had access to the vehicle, appellant admitted that he had been living in his vehicle on the weekend of his arrest to avoid his girlfriend's children.

Because appellant cannot point to any evidence that supports his alternative hypothesis "that unbeknownst to [him] there was a firearm or ammunition in the vehicle," he has not shown that a rational theory other than guilt exists. *See State v. Stein*, 776 N.W.2d 709, 714 (Minn. 2010) (explaining that "[t]o successfully challenge a conviction based upon circumstantial evidence, a defendant must point to evidence in the record that is consistent with a rational theory other than . . . guilt" as appellate courts will not reverse a jury verdict based on mere "possibilities of innocence") (quotation omitted)). Accordingly, the circumstances proved, and the reasonable inferences that can be drawn from those circumstances, are consistent with appellant's guilt of possession of a firearm and ammunition by an ineligible person.

**IV.** **The district court did not err by directing a verdict as to the second element of fleeing a peace officer.**

This court reviews de novo whether a jury instruction correctly states the law. *State v. Lory*, 559 N.W.2d 425, 427-28 (Minn. App. 1997), *rev. denied* (Minn. Apr. 15, 1997). In criminal cases, district courts may not direct a verdict for the prosecution nor may it "instruct the jury that any of the elements of the offense have been proven beyond a

18

reasonable doubt, absent a judicial admission by the defendant of any of the elements." *State v. Perkins*, 353 N.W.2d 557, 561 (Minn. 1984).  Appellate courts will conclude that a district court directed a verdict if the district court's ruling "represents a resolution, correct or not, of some or all of the factual elements of the offense charged."  *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977).  But a district court does not commit reversible error when instructing a jury on an issue of law, rather than a question of fact or application of law to facts.  *State v. Bowen*, 910 N.W.2d 39, 49-50 (Minn. App. 2018) (holding district court did not err by instructing the jury to determine whether Bowen "took a bottle of liquor" to convict him of simple robbery for taking "personal property" because whether the bottle was personal property was a question of law), *aff'd*, 921 N.W.2d 763 (Minn. 2019) (analyzing only sufficiency of the evidence).

In Minnesota, to be convicted of fleeing a peace officer by means other than a motor vehicle, the state must prove beyond a reasonable doubt that the defendant ran, hid, or fled from a peace officer, who was "acting in the lawful discharge of an official duty," to avoid arrest or investigation.  Minn. Stat. § 609.487, subd. 6 (2020).  Appellant argues that the district court erred by instructing the jury that, as to the second element, "The court has ruled, and therefore you must accept, that the peace officers were acting in the lawful discharge of their duties."

The district court's instruction deprived appellant of the right to a jury determination as to the second element of the offense of fleeing a peace officer.  But the district court gave this instruction because it ruled before trial that the search of appellant's vehicle was not unconstitutional.  No questions of fact were left for the jury to resolve as to the second

element of fleeing a peace officer.  Instead, the district court instructed the jury on a purely legal question.  *See Bowen*, 910 N.W.2d at 49.

Accordingly, the district court did not err by instructing the jury as to the second element of the crime of fleeing a peace officer by means other than a motor vehicle.

**Affirmed.**